**REAL ESTATE EQUITY STRATEGIES, LLC,**
Respondent,

v.

Michael E. JONES, et al., Appellants.

No. A05–2083.

Court of Appeals of Minnesota.

Aug. 8, 2006.

Jack E. Pierce, Tracy Halliday, Pierce Law Firm, P.A., Minneapolis, MN, for respondent.

Kristine K. Nogosek, Robert B. Bauer, Severson, Sheldon, Dougherty & Molenda, P.A., Apple Valley, MN, for appellants.

Leah K. Weaver, Mid–Minnesota Legal Assistance, Minneapolis, MN; and David P. Graham, Michael L. Dolan, Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN, for amicus curiae Mid–Minnesota Legal Assistance.

Mike Hatch, Attorney General, Julie Yuki Ralston Aoki, Martin Carlson, Assistant Attorneys General, St. Paul, MN, for amicus curiae State of Minnesota.

Considered and decided by HUDSON, Presiding Judge; KALITOWSKI, Judge; and WORKE, Judge.

## OPINION

HUDSON, Judge.

When the mortgage on the home of Michael and Edith Jones (owners) went into foreclosure, they entered an agreement with Real Estate Equity Strategies (REES) and related entities under which owners purportedly sold their home to a REES-related entity and leased it back with an option to purchase. Owners later defaulted on the lease and REES filed an eviction action against owners. Owners filed a separate equity-stripping action against REES and the related entities un-

der Minn.Stat. §§ 325N.01–.18 (2004) (hereinafter chapter 325N). Owners also filed an answer in the eviction proceeding noting the pendency of the chapter 325N action and moved for the district court to dismiss the eviction proceeding or to stay it pending resolution of the chapter 325N action. The district court denied that motion and awarded REES an eviction judgment. Owners appeal, arguing that the district court should have dismissed or stayed the eviction proceeding. REES argues that because owners are no longer in possession of the property, the appeal is moot. Because the appeal is not moot and because the district court properly applied the law and did not abuse its discretion in declining to stay the eviction proceeding, we affirm.

## FACTS

In spring 2005, the mortgage on owners' home was in foreclosure. In May, owners entered an agreement with REES, under which owners purportedly sold their home to a REES-related entity and leased it back, with an option to repurchase the home after making a limited number of timely lease payments. Part of owners' incentive to enter the arrangement was that some of the equity in their home could be used to pay debts while their payments on the lease were supposed to be approximately what the payments had been under the mortgage that was in foreclosure. The sale-lease-back transaction closed in early June.

After the closing, owners learned that their lease payment would be substantially greater than their mortgage payment had been. Owners defaulted on the REES lease, and REES filed an eviction action against owners. Owners responded by filing (a) an equity-stripping action under chapter 325N against REES and the related entities, alleging, among other things,

equity stripping by REES and the related entities, that the parties' arrangement was not an actual conveyance of the home but an equitable mortgage, and that any agreement between owners and the REES entities should be rescinded; (b) an answer in the eviction proceeding asserting the pendency of the chapter 325N action; and (c) a motion in the eviction proceeding asking the eviction court to dismiss the eviction proceeding or to stay that proceeding pending resolution of the chapter 325N action. The eviction court denied owners' motion to dismiss or stay the proceeding, and, after a trial in which owners admitted that they defaulted on the REES lease, granted REES an eviction judgment.

Owners appeal. REES argues that because owners vacated the property, the appeal is now moot. Also, Mid–Minnesota Legal Assistance and the State of Minnesota have combined to file a single amicus brief supporting owners.

## ISSUES

I. Is this appeal moot because REES has possession of the property?

II. Does the assertion of a claim to title by owners deprive the district court of subject-matter jurisdiction to hear the eviction proceeding?

III. Did the district court abuse its discretion by not staying the eviction proceeding because of the pendency of owners' action brought under chapter 325N?

IV. Did refusing to stay or dismiss the eviction proceeding contravene chapter 325N?

## ANALYSIS

### I

■ REES argues that under *Lanthier v. Michaelson,* 394 N.W.2d 245, 246 (Minn.

App.1986), *review denied* (Minn. Nov. 26, 1986), this appeal is moot because REES now has possession of the property. In a prior appeal in which *Lanthier* was cited for this proposition, this court distinguished *Lanthier* by noting that it involved a voluntary vacation of the premises and rejected the argument: "Where a landlord's right to possession of property rests only on an unlawful detainer judgment, execution of the associated writ of restitution does not moot an appeal of the underlying judgment." *Scroggins v. Solchaga,* 552 N.W.2d 248, 252–53 (Minn.App.1996) (citing *Pushor v. Dale,* 242 Minn. 564, 567–68, 66 N.W.2d 11, 13–14 (1954)), *review denied* (Minn. Oct. 29, 1996). Here, at REES's request, the district court granted REES "an immediate Writ of Recovery for the Premises." Based on this writ and owners' inability to post the bond set by the district court pursuant to Minn.Stat. § 504B.371, subd. 3 (2004), owners vacated the property and REES obtained possession. Because REES obtained possession of the property based on the eviction judgment, the owners' vacation of the property was not voluntary, and this appeal is not moot.

## II

■ *Steele v. Bond,* 28 Minn. 267, 9 N.W. 772 (1881), states that unlawful-detainer proceedings are "summary and special in their nature," that the unlawful-detainer statutes are to be "construed ... to apply only to the conventional relation of landlord and tenant[,]" and that "[t]he foundation[al] fact upon which the jurisdiction [of the court] rests [in unlawful-detainer proceedings] is that the tenant is in possession of the land in consequence and by virtue of [the landlord-tenant] relation, and unlawfully withholds possession after a default in the performance of the terms upon which he entered ...." 28 Minn. at 272, 273, 9 N.W. at 774, 775. Amici quote

the second and third of these statements and cite cases observing that eviction proceedings are limited to addressing the right to present possession of property. Amici also note that Minn.Stat. § 504B.121 (2004) allows a tenant, under certain circumstances, to challenge a landlord's title to property in the landlord's action to recover possession of that property. Amici then argue that a tenant who, in an eviction action, challenges the landlord's title under Minn.Stat. § 504B.121 deprives the district court of subject-matter jurisdiction to hear the eviction action. The gist of amici's argument seems to be that if a "tenant" can claim title to the property from which the "tenant's" purported "landlord" is seeking to evict the "tenant," the relationship between the "tenant" and the "landlord" cannot be the "conventional" landlord-tenant relationship, which *Steele* says is the jurisdictional basis for an unlawful-detainer action.

■ While Minn.Stat. § 504B.121 was not cited to the district court for any purpose, questions of subject-matter jurisdiction may be raised for the first time on appeal. *Cochrane v. Tudor Oaks Condo. Project,* 529 N.W.2d 429, 432 (Minn.App. 1995), *review denied* (Minn. May 31, 1995); *see* Minn. R. Civ. P. 12.08(c) (stating "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

■ Subject-matter jurisdiction is "a court's power to hear and determine cases of the general class or category to which the proceedings in question belong[,]" and whether subject-matter jurisdiction exists is reviewed de novo. *Bode v. Minn. Dep't of Natural Res.,* 594 N.W.2d 257, 259 (Minn.App.1999) (quotation omitted) (defining subject-matter jurisdiction), *aff'd,* 612 N.W.2d 862 (Minn.2000); *Kellar v.*

*Von Holtum,* 605 N.W.2d 696, 700 (Minn. 2000) (standard of review). We reject amici's argument that a tenant can deprive a district court of subject-matter jurisdiction to hear an eviction proceeding by challenging, under Minn.Stat. § 504B.121, a landlord's title to the premises. *Steele* remains good law regarding the summary nature of unlawful-detainer/eviction proceedings. *See* Minn.Stat. § 504B.001, subd. 4 (2004) (defining "eviction" as "a summary court proceeding to remove a tenant or occupant from or otherwise recover possession of real property"). But *Steele* is stale regarding jurisdiction.

*Steele* was decided in 1881 and involved an unlawful-detainer appeal from a St. Paul Municipal Court. 28 Minn. at 269, 9 N.W. at 772. At that time, unlawful-detainer proceedings were generally heard by justices of the peace, but in the City of St. Paul, unlawful-detainer proceedings were heard in municipal court. Minn. Gen.Stat. ch. 84, § 2 (1878) (authority of justices of the peace in unlawful-detainer actions); Minn. Gen.Stat. ch. 64, § 87 (1878) (conferring on St. Paul Municipal Court powers of justice of the peace, among other things). In addressing the scope of the St. Paul Municipal Court's ability to act, *Steele* reasoned by analogy to justices of the peace:

> [J]ustices' courts are not appropriate tribunals for the administration of equity jurisprudence, and the course of proceedings therein is not adapted to administer equitable relief; nor can it be construed to confer power or jurisdiction to try disputed questions of title to real estate, because the constitution expressly withholds the exercise of such power from justices of the peace.

28 Minn. at 273, 9 N.W. at 774. Thus, *Steele's* statements that the foundation for the court's jurisdiction in an unlawful-detainer proceeding is the existence of a conventional landlord-tenant relationship were made in a context in which the tribunals hearing unlawful-detainer proceedings were prohibited from addressing title to land and lacked equitable powers. Under that state of the law, if a tenant challenged a landlord's title to the property at issue, that title dispute could not be heard by the tribunal then assigned to hear unlawful detainers.

Since *Steele,* the legal landscape for landlord-tenant disputes has changed. Among other things, in 1898, the supreme court ruled in an ejectment action that "a lessee cannot deny the title of his landlord, and this rule applies whether the tenant was in possession before the lease was made or not." *Sage v. Halversen,* 72 Minn. 294, 295, 75 N.W. 229, 229 (1898). In 1899, less than eight months after the *Sage* decision, the legislature passed a statute prohibiting lessees-in-possession from disputing a landlord's title in a landlord's action to recover possession of the premises, but also stating that the prohibition did not apply to lessees who, at and before entering the lease, were "already in possession of the leased lands or tenements under any claim or title adverse or hostile to that of such lessor." 1899 Minn. Laws ch. 13, §§ 1, 2 at 9–10; *cf. Hoben v. City of Minneapolis,* 324 N.W.2d 161, 163 (Minn.1982) (noting prompt legislative action after supreme court decision indicates legislature's action was in response to supreme court's decision).

The 1899 statute, with renumerations and minor amendments, is the current Minn.Stat. § 504B.121 upon which amici base their argument that a tenant's title challenge under Minn.Stat. § 504B.121 deprives the district court of subject-matter jurisdiction to hear an eviction proceeding. The current version of the statute allows a tenant to challenge a landlord's title "in an action brought by the landlord to recover

possession of the property" if "prior to entering into the lease, [the tenant] possessed the property under a claim of title that was adverse or hostile to that of the landlord." Minn.Stat. § 504B.121. Reading the current statute to allow a tenant in an eviction proceeding to challenge a landlord's title to property recognizes the fact that there has not always been a universal prohibition on unlawful-detainer proceedings addressing title questions. Indeed, a 1917 amendment of the statute governing the Minneapolis Municipal Courts granted them jurisdiction over unlawful-detainer proceedings "whether involving the title to real estate or not." 1917 Minn. Laws ch. 407, §§ 1, 3 at 616; *see Dahlberg v. Young*, 231 Minn. 60, 64–68, 42 N.W.2d 570, 574–576 (1950) (discussing 1917 amendment and stating "[t]he obvious purpose [of the amendment] was merely to extend the court's jurisdiction in this type of action to cases involving disputes as to the title, which disputes, however, did not require an exercise of purely equitable relief for their determination").

Other changes in the legal landscape for landlord-tenant disputes occurred when the Minnesota trial benches were consolidated into a single district court. That district court has original jurisdiction "in all civil actions ... [and] in all special proceedings not exclusively cognizable by some other court or tribunal." Minn.Stat. § 484.01, subd. 1 (2004). Also, the district court does not lack the equitable powers

that even the municipal courts benefiting from the 1917 expansion of municipal-court jurisdiction lacked. Similarly, in the late 1990s, the landlord-tenant statutes were consolidated, resulting in the former unlawful-detainer statutes being replaced by the current eviction statutes.[1]

This background for eviction proceedings shows that the limited scope of those proceedings is a result of the summary nature of the prior unlawful-detainer proceedings as well as the fact that, originally, the tribunals hearing unlawful-detainer proceedings lacked both jurisdiction to address title matters and jurisdiction to act in equity. The summary nature of the eviction proceeding remains. Minn.Stat. § 504B.001, subd. 4. The title-related and equity-related jurisdictional limitations of the tribunals hearing those matters, however, have been removed. Therefore, any current limitation on the scope of eviction proceedings is a function of the summary nature of the proceeding, *not* a limit on the ability of the court to "hear and determine" the action, per *Bode's* definition of subject-matter jurisdiction. Alternatively stated: That unlawful-detainer proceedings did not, and eviction proceedings do not, address matters other than the immediate right to possession of the property[2] was and is a general rule, not a universally applicable axiom. *Cf. Lilyerd v. Carlson*, 499 N.W.2d 803, 812 (Minn.1993) (stating "[w]hile an unlawful detainer action is *generally* summary in nature, determines only present possessory rights, and *usually*

**1.** Because the questions are not squarely before us in this appeal, we decline to comment on the fact that it was not until chapter 504B became effective that what is Minn.Stat. § 504B.121 was put into the same chapter as what are the current eviction provisions and that neither Minn.Stat. § 504B.121 nor its predecessors have been previously cited in an eviction/unlawful-detainer proceeding.

**2.** *See, e.g., Gallagher v. Moffet*, 233 Minn. 330, 333, 46 N.W.2d 792, 793 (1951) (stating that

unlawful-detainer proceeding "merely determines the right to present possession and does not adjudicate the ultimate legal or equitable rights of ownership possessed by the parties"); *Keller v. Henvit*, 219 Minn. 580, 585, 18 N.W.2d 544, 547 (1945) (stating that unlawful-detainer provisions were "not designed to try title or to serve as a substitute for ejectment. Instead, these provisions were intended to prevent parties from taking the law into their own hands").

does not bar subsequent actions involving title or equitable rights of the parties, the counterclaim here could have been tried to a jury" (emphasis added) (citations omitted)); *AMRESCO Residential Mortgage Corp. v. Stange,* 631 N.W.2d 444, 445 (Minn.App.2001) (noting, in eviction proceeding, that "the Minnesota Supreme Court has suggested in dicta that, even though [unlawful-detainer] proceedings are usually summary in nature, a counterclaim involving title should have been heard in an eviction proceeding to avoid the problems that later arose in a separate title action" (citing *Lilyerd*)). Because the current limits on the scope of eviction proceedings are not based on an inability of the district court to adjudicate disputes other than the right to present possession of the premises, a tenant who challenges a landlord's title pursuant to Minn.Stat. § 504B.121 does not deprive the district court of subject-matter jurisdiction to hear the eviction proceeding.[3]

## III

■ Owners argue that the district court should have stayed or dismissed the eviction proceeding to allow owners' chapter 325N action to be resolved before the eviction proceeding was resolved. Generally, whether to stay a proceeding is discretionary with the district court, its decision on the issue will not be altered on appeal absent an abuse of that discretion, and the test for whether an abuse of discretion occurs is "whether a denial of a continuance would prejudice the outcome of the trial." *Lanzo v. F & D Motor*

*Works,* 396 N.W.2d 631, 635 (Minn.App. 1986).

### A.  Minn.Stat. § 504B.121

■ Owners argue that, based on the exception in Minn.Stat. § 504B.121 (2004) and "the evidence received at trial regarding the true legal relationship of the parties, the district court erred[ ] in its determination that a pure landlord-tenant relationship existed and that [REES] was entitled to possession." While the question of a stay or dismissal was presented to the district court, the record shows that Minn.Stat. § 504B.121 was not mentioned, either as the basis for a stay or a dismissal, or for any other reason. Therefore, we conclude that the impact of Minn.Stat. § 504B.121 on the question of whether the eviction court should have stayed the eviction proceeding is not properly before this court, and we decline to address it. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that generally appellate courts consider only issues presented to and considered by the district court and that a party cannot "obtain review by raising the same general issue litigated below but under a different theory" on appeal). Our conclusion here is not meant to trivialize the extent or import of the problem of equity-stripping. Likewise, we take no position on whether, or to what extent, equity-stripping may have occurred here.

### B.  Loss of Premises

■ Citing language in the original bill that later became chapter 325N and lan-

---

3. Because *Steele* is stale regarding jurisdiction, we need not address owners' *Steele*-based argument that the lack of a conventional landlord-tenant relationship precluded the district court from proceeding with the eviction action. Owners cite *Beecher v. Spain,* 140 Minn. 255, 167 N.W. 793 (1918), for the same proposition. But *Beecher* does not indicate whether the municipal court made its decision before or after the effective date of the 1917 amendments allowing Minneapolis Municipal Courts to address unlawful-detainer proceedings involving title. *Beecher* cites only *Steele* as authority for the relevant portion of the opinion. Therefore, *Beecher* apparently did not contemplate the 1917 amendments and the analysis above addresses owners' *Beecher*-based argument as well.

guage from a summary of the proposed chapter 325N provided to the legislature by the House Research Committee, owners challenge the eviction court's refusal to stay or dismiss the eviction action, alleging that

> [o]nce the foreclosed homeowner is dispossessed of their home, the foreclosure purchaser is in control of the property and may either re-let the property, or worse, sell the property to a good faith purchaser. The effect of a conveyance of the property from the foreclosure purchaser to a good faith purchaser, by statute prohibits the foreclosed homeowner from affecting the rights of the good faith purchaser in the property. Minn.Stat. § 325N.18, subd. 3.[4]

The crux of this argument seems to be owners' assumption that if REES prevails in the eviction proceeding and conveys the property before the resolution of owners' action under chapter 325N, Minn.Stat. § 325N.18 (2004) could leave owners without an ability to recover the property in the event owners prevail in their chapter 325N action.

The relevant part of Minn.Stat. § 325N.18, subd. 3, states that "[n]o action under this section shall affect the rights in the foreclosed property held by a good faith purchaser for value under [statutory provisions not at issue here], or other applicable law." While we cannot definitively comment on a transaction that is not currently before us for review, we note that, in addition to asking the eviction court to stay the eviction proceeding, owners appear to have had other options for protecting their alleged interests in the property, including the filing of a notice of lis pendens regarding their chapter 325N action. *Cf.* Minn.Stat. § 557.02 (2004) (explaining impact of notice of lis pendens); *Miller v.*

*Hennen,* 438 N.W.2d 366, 369 (Minn.1989) (defining purchaser in good faith). Also, owners could have, in the chapter 325N action, moved that district court to enjoin the eviction proceedings. *See William Weisman Holding Co. v. Miller,* 152 Minn. 330, 332, 188 N.W. 732, 733 (1922) (noting that a court in which an equitable action is pending may enjoin the prosecution of an unlawful-detainer action upon proper showing that he ought not be ousted); *AMRESCO,* 631 N.W.2d at 446. Because owners did not attempt to exercise other apparently available options for seeking to protect their alleged interests in the property, they have not shown that the eviction court abused its discretion by not staying the eviction proceeding. *Cf. Fraser v. Fraser,* 642 N.W.2d 34, 40–41 (Minn.App. 2002) (stating that "only if" there were no other options for litigating an equitable claim would it be appropriate for eviction court to entertain the claim).

## IV

Amici argue that allowing an eviction proceeding to finish before a chapter 325N action is resolved is inconsistent with chapter 325N because allowing the eviction proceeding to go forward allows the landlord, who may, in the chapter 325N action, be found to *lack* title to the property, to obtain possession of the property and possibly convey it. But amici's argument does not address the tenant's opportunities to (a) file a notice of lis pendens; (b) ask the chapter 325N district court to enjoin pursuit of the eviction proceeding; (c) recover compensatory damages in the chapter 325N action; (d) recover exemplary damages in the chapter 325N action, which, under Minn.Stat. § 325N.18, subd. 2 (2004), "shall not be less than 1–1/2 times the foreclosed homeowner's actual dam-

---

4. Owners admit that the language they cite from the prior version of the bill was not included in the bill that was ultimately enacted.

ages"; or (e) seek any other remedy available to the tenant as allowed by Minn.Stat. § 325N.18, subd. 3 (2004). Moreover, to the extent that the district court hearing a chapter 325N action has the information relevant to that action, that district court would be ideally situated to decide whether, to what extent, and under what conditions, to enjoin a related eviction proceeding. Case-by-case determinations of whether to enjoin pursuit of eviction proceedings are both judicially more efficient (because the decision-maker may have more information and a broader spectrum of issues before it) and more consistent with honoring the summary nature of eviction proceedings. We decline to adopt a universal requirement that eviction proceedings be stayed whenever a claim is asserted under chapter 325N.

## DECISION

Because owners vacated the property only to avoid imminent enforcement of the eviction judgment, this appeal is not moot. Also, the fact that owners raised a title question in this eviction proceeding, under Minn.Stat. § 504B.121, does not deprive the district court of subject-matter jurisdiction to address the eviction proceeding. Finally, because owners apparently had ways to protect their alleged interests in the property other than obtaining a stay of the eviction proceeding from the eviction court, owners have not shown that the eviction court abused its discretion by declining to stay that proceeding or otherwise acted in a manner contrary to chapter 325N.

**Affirmed.**