*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1445**

Doris A. Seward,
Respondent,

vs.

Taylor Florin-Clemants,
Appellant,

John Doe, et al.,
Defendants.

**Filed June 10, 2024**
**Affirmed**
**Cochran, Judge**

Hennepin County District Court
File No. 27-CV-HC-23-2682

Joel D. Van Nurden, Van Nurden Law, PLLC, Hopkins, Minnesota (for respondent)

Taylor Lars Florin-Clemants, Minnetonka, Minnesota (pro se appellant)

Considered and decided by Johnson, Presiding Judge; Cochran, Judge; and Kirk, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**COCHRAN**, Judge

On appeal from final judgment in this eviction action based on appellant-tenant holding over, appellant challenges the district court's determination that he failed to establish a retaliation defense. Appellant also argues that the district court improperly limited the scope of the eviction trial and abused its discretion by denying his motions for a continuance. We affirm.

## FACTS

Respondent-landlord Doris A. Seward owns a house in Minnetonka (the premises), which she purchased over 50 years ago. Appellant-tenant Taylor Lars Florin-Clemants is Seward's grandson. Florin-Clemants moved into the premises to assist Seward after she was diagnosed with Alzheimer's. Florin-Clemants and Seward did not enter into a written lease agreement. Instead, the two had "an implied understanding" that Florin-Clemants would live at the premises to care for Seward. Florin-Clemants did not pay rent.

In October 2021, Seward broke her hip. As a result, Seward was hospitalized, underwent hip-replacement surgery, and temporarily moved to a transitional-care facility. Judith Yess, Seward's daughter, determined that Seward needed more care than Florin-Clemants could provide at the premises. While Seward was recovering in the transitional-care facility, Yess initiated efforts to move Seward to an assisted-living facility that offered 24-hour care. But Yess soon realized that Seward would need to sell her only substantial asset—the premises—to cover the cost of the assisted-living facility and eventually qualify for Medical Assistance.

Yess visited the premises in November 2021 to acquire documents necessary for Seward's application for Medical Assistance, including Seward's driver's license and Social Security card. Florin-Clemants did not allow Yess to enter the premises. Yess grew concerned after Florin-Clemants exhibited threatening behavior. As things escalated, Florin-Clemants called the police, who "helped calm the situation." On December 8, 2021, Yess, as Seward's attorney-in-fact, gave Florin-Clemants a written notice to quit, requiring him to vacate the premises by January 31, 2022.

After receiving the notice to quit, Florin-Clemants petitioned for and received emergency guardianship of Seward. He then moved Seward from the transitional-care facility back to the premises. He did so without telling Yess or other family members. After learning that Seward was living at the premises again, Yess ceased the eviction process against Florin-Clemants.

A "guardianship battle" followed, which concluded in June 2022 when Yess was appointed the legal guardian of Seward by the Hennepin County probate court. In July 2022, Yess moved Seward from the premises into a memory-care facility, but Florin-Clemants continued to live at the premises. In December 2022, Yess, as Seward's attorney-in-fact, issued a notice to quit to Florin-Clemants that required him to vacate the premises by March 31, 2023. Florin-Clemants did not comply with the notice to quit.

In April 2023, Seward's attorney brought an eviction action alleging that Florin-Clemants was unlawfully holding over. A court trial was scheduled for May 26, 2023, before a housing court referee.

3

Prior to the trial, Florin-Clemants twice moved for a continuance. In the first motion, Florin-Clemants sought the continuance to give him additional time to obtain transcripts from another proceeding in which Florin-Clemants was contesting the appointment of Yess as Seward's guardian. Florin-Clemants stated that the transcripts would provide evidence that is "highly relevant" and "compelling" in his defense to the eviction action. In the second motion, Florin-Clemants stated that he was having difficulty retaining counsel. The district court denied both motions, and the eviction action proceeded to trial as scheduled.

At the trial, Florin-Clemants represented himself. Florin-Clemants did not dispute that he held over after receiving a notice to quit. Instead, he argued that he had the right to remain at the premises because the "eviction was brought against [him] for retaliatory reasons" and because he had "a valid ownership in the property." He also claimed that Yess was only granted guardianship of Seward based on a stipulation between Florin-Clemants and Yess. According to Florin-Clemants, the stipulation required Yess to do "certain things to help" Seward stay at the premises with Florin-Clemants. Florin-Clemants alleged that Yess intentionally violated the stipulation so that Seward could be removed from the premises. Florin-Clemants added that he was already appealing a separate district court decision in the guardianship matter.

The housing court referee determined that the district court's sole role in this proceeding was "to determine who is entitled to possession of [the] property, and whether or not there was a valid notice given [to quit,] as this is an eviction for holdover." Accordingly, the referee did not permit Florin-Clemants to present evidence regarding the

4

validity of Seward's guardianship because "another court ha[d] already made that determination." The referee also noted that the district court could not transfer the deed of the premises to Florin-Clemants as part of this proceeding, and that the only question at the trial was possession. Thus, the referee foreclosed Florin-Clemants's inquiries into ownership of the premises but permitted testimony on the issue of retaliation.

Florin-Clemants testified that the eviction was retaliatory for several reasons. First, he testified that the eviction was in retaliation for "the event when [Florin-Clemants] called the police on [Yess] for violating [Florin-Clemants's] privacy." Second, Florin-Clemants testified that the eviction was in retaliation for him "not letting [Yess] discriminate against [Seward] for being old, frail, and having [dementia]." Third, he testified that he was being retaliated against for exercising his "rights as an at-will tenant." Finally, Florin-Clemants testified that the eviction was in retaliation for him asking Yess to perform various repairs to the premises.

Yess testified that the reason for the notice to quit was financial, not retaliatory. Yess testified that she needed to sell the house to cover expenses associated with Seward's residency at an assisted-living facility. Yess further testified that any complaints made by Florin-Clemants—"if there were any"—had nothing to do with the notice to quit.

The housing court referee found that the parties entered into an oral lease, Florin-Clemants received proper written notice to quit, and he was holding over. Thus, the referee concluded that the only issue remaining before the district court was whether the eviction was retaliatory. The referee determined that Florin-Clemants did not present evidence that Seward, through Yess, retaliated against him. And the referee concluded that, "even if

5

[Florin-Clemants] had presented evidence to support a claim of retaliation, the evidence presented to the [c]ourt makes it clear" that the reason for the notice to quit was "so that the property could be sold to pay for [Seward's] ongoing medical care needs." Therefore, the referee determined that "eviction is appropriate in this case." Accordingly, the referee issued a writ of recovery and order to vacate.

Florin-Clemants sought review of the referee's findings and order, which the district court performed.[1] On review, Florin-Clemants focused on the trial testimony regarding Yess's attempt to enter the premises to acquire Seward's documents in November 2021. Florin-Clemants asserted that Yess "forced [him] to call the police to enforce his rights to continue living at the house" and that Yess acted in retaliation.

In September 2023, the district court affirmed the referee's decision in full. The district court determined that the referee properly limited the trial to the issues of possession and retaliation. The district court then concluded that "[t]he referee correctly determined that [Florin-Clemants] had the burden of proving a retaliatory purpose since the eviction action was initiated more than 90 days after the police report at the center of the retaliation claim." The district court also determined that the police call "was not related to [Florin-Clemants's] tenancy or a violation of a health, safety, housing, or building code or ordinance" as necessary to show retaliation under Minnesota Statutes section 504B.285, subdivision 2 (2022). Lastly, the district court deferred to the referee's

[1] The district court also stayed the writ of recovery and order to vacate. Seward's attorney moved for an order requiring Florin-Clemants to post a bond during the pendency of the district court's review. The district court granted the motion, requiring Florin-Clemants to deposit approximately $1,600 with the court each month.

determination that Yess testified credibly about the reason for the planned sale of the premises. Accordingly, the district court affirmed the referee's decision and judgment of recovery. This appeal follows.

**DECISION**

As a preliminary matter, we note that Florin-Clemants, who is self-represented, appears to raise numerous issues in his brief. It is difficult to decipher many of the issues and arguments presented. While we are willing to make some accommodations to self-represented litigants, self-represented appellants are not "relieved of the burden of, at least, adequately communicating to the court what it is [they] want[] accomplished and by whom." *Carpenter v. Woodvale, Inc.*, 400 N.W.2d 727, 729 (Minn. 1987). We address the arguments that we can discern from Florin-Clemants's brief. To the extent that we do not address an argument, we conclude that such argument is forfeited. *See In re Civ. Commitment of Kropp*, 895 N.W.2d 647, 653 (Minn. App. 2017) ("Minnesota appellate courts decline to reach an issue in the absence of adequate briefing."), *rev. denied* (Minn. June 20, 2017).

Based on our review of Florin-Clemants's brief, we discern the following three arguments. First, he argues that the district court erred in its conclusion that he failed to prove that the termination of tenancy was retaliatory. Second, Florin-Clemants asserts that the district court improperly limited the scope of his eviction trial. Third, Florin-Clemants argues that the district court abused its discretion by denying his pretrial motions for a continuance. We address each argument in turn.

**I.      The district court did not err by concluding that Florin-Clemants failed to establish a retaliation defense.**

On appeal from an eviction judgment, we review the district court's factual findings for clear error and defer to the district court's credibility determinations. *Cimarron Vill. v. Washington*, 659 N.W.2d 811, 817-18 (Minn. App. 2003).[2] We review a district court's legal conclusions de novo. *Nationwide Hous. Corp. v. Skoglund*, 906 N.W.2d 900, 907 (Minn. App. 2018), *rev. denied* (Minn. Mar. 28, 2018).

A landlord may recover possession of a premises by eviction when a tenant "holds over after the termination of the tenancy by notice to quit." Minn. Stat. § 504B.285, subd. 1(a)(3) (2022). But a landlord may not terminate a tenancy in retaliation for a tenant's "good faith" (1) efforts to enforce rights under a lease or contract or (2) report to a governmental authority of the landlord's violation of a health, safety, housing, or building code or ordinance. *Id.*, subd. 2 (2022). The tenant generally has the burden to show "by a fair preponderance of the evidence" that the eviction was retaliatory. *Id.* But, if the notice to quit was served within 90 days of an act coming within clause (1) or (2) above, then the burden shifts to the landlord to prove that the notice to quit was served for a non-retaliatory purpose. *Id.*

Florin-Clemants argues that Seward terminated the tenancy in retaliation for a complaint that he made to "the government agency responsible to hear the complaint"

---

[2] "The findings of a referee, to the extent adopted by the court, shall be considered as the findings of the court." Minn. R. Civ. P. 52.01. The district court affirmed the housing referee's decision in total. Accordingly, we consider the housing referee's findings to be those of the district court on appeal.

8

regarding his concerns about the conditions of the premises. Florin-Clemants appears to be referring to his testimony at the guardianship hearings about "[Yess's] violations of Minnesota housing laws and statutes" in October and November of 2022. Florin-Clemants also argues that the district court erred by placing the burden on him to prove retaliation, because the December 28, 2022 notice to quit was issued within 90 days of his October and November 2022 testimony.

Florin-Clemants's argument is unavailing for two reasons. First, he did not raise this specific retaliation argument below. Instead, at trial, Florin-Clemants argued that the termination was in retaliation for either (a) Florin-Clemants calling the police in November 2021 when Yess attempted to enter the premises to acquire Seward's documents or (b) Florin-Clemants complaining to Yess in July 2022 about the condition of the premises. Both of these acts by Florin-Clemants occurred more than 90 days before the December 28, 2022, notice to quit. Furthermore, at trial, Florin-Clemants made no mention of reports to a "government agency" in 2022, he did not identify his testimony in the guardianship proceeding as a reason for the allegedly retaliatory termination, and his testimony in the guardianship proceeding is not part of the record in this appeal. Therefore, Florin-Clemants has forfeited this argument on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (holding that appellate courts will not consider matters not argued to and considered by the district court); *see also Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn. 1977) ("It is well settled that an appellate court may not base its decision on matters outside the record on appeal, and that matters not produced and received in evidence below may not be considered.").

Regardless, assuming the argument was properly before us, we would not be persuaded. As noted above, the referee found that, "even if [Florin-Clemants] had presented evidence to support a claim of retaliation, the evidence presented . . . makes it clear that [Florin-Clemants] was served the notice to [quit] so that the property could be sold to pay for [Seward's] ongoing medical care needs." In other words, the referee determined that, even if Seward had the burden under section 504B.285 to demonstrate that the eviction was done for a non-retaliatory purpose, Seward satisfied that burden. On appeal, Florin-Clemants fails to point to any evidence contradicting Yess's financial justification for terminating the tenancy. Moreover, we defer to the referee's decision to credit Yess's testimony. *See Cimarron*, 659 N.W.2d at 818. Accordingly, we conclude that the district court did not err by determining that Florin-Clemants failed to prove by a preponderance of the evidence that the termination of the tenancy was retaliatory.

## II. The district court did not err in determining that the scope of the eviction trial was properly limited to the retaliation issue.

Florin-Clemants asserts that the referee erred by precluding him from arguing the issues of ownership of the premises or the validity of Seward's guardianship at the eviction trial. On appeal, Florin-Clemants maintains that he has an ownership interest in the premises and that Yess's guardianship over Seward is invalid. Florin-Clemants's arguments are unavailing and misplaced.

Eviction actions are summary proceedings "intended to adjudicate only the limited question of present possessory rights to the property." *Deutsche Bank Nat. Tr. Co. v. Hanson*, 841 N.W.2d 161, 164 (Minn. App. 2014). An eviction action "does not

10

adjudicate the ultimate legal or equitable rights of ownership possessed by the parties." *Fed. Home Loan Mortg. Corp. v. Mitchell*, 862 N.W.2d 67, 71 (Minn. App. 2015) (quoting *Dahlberg v. Young*, 42 N.W.2d 570, 576 (Minn. 1950)). When a party to an eviction action has an alternative procedure to resolve an issue unrelated to present possessory rights, that issue should be adjudicated through "the alternate procedure instead of expanding the eviction proceeding." *Amresco Residential Mortg. Corp. v. Stange*, 631 N.W.2d 444, 445-46 (Minn. App. 2001).

Florin-Clemants has alternative procedures to address his challenges to the ownership of the premises and Seward's guardianship. Regarding ownership, an eviction action "is not a bar to an action involving the title to the property, nor to an action to maintain or enforce equitable rights therein." *William Weisman Holding Co. v. Miller*, 188 N.W. 732, 733 (Minn. 1922). In other words, and as the district court noted, this "eviction action does not bar [Florin-Clemants] from pursuing a contract claim or other equitable relief related to the property." As for the guardianship, Florin-Clemants is already involved in another proceeding regarding Seward's guardianship and has appealed the district court's decision in that case. Thus, Florin-Clemants has alternate procedures to address both issues, and there is no reason to "interfere with the summary nature of" this eviction proceeding. *Stange*, 631 N.W.2d at 446. We conclude that the district court did not err in its determination that the referee properly limited the scope of Florin-Clemants's eviction trial.

11

**III.** **The district court did not abuse its discretion by denying Florin-Clemants's motions for a continuance.**

Florin-Clemants next argues that the district court abused its discretion by denying his motions for a continuance because he was not provided sufficient time to gather evidence for his trial and he was unable to secure counsel. Florin-Clemants asserts that, as a result, his "[d]ue [p]rocess right to a fair trial" was violated. We are not persuaded.

"The granting of a continuance is a matter within the discretion of the [district] court and its ruling will not be reversed absent a showing of clear abuse of discretion." *Dunshee v. Douglas*, 255 N.W.2d 42, 45 (Minn. 1977). "[T]he test for whether an abuse of discretion occurs is whether a denial of a continuance would prejudice the outcome of the trial." *Real Est. Equity Strategies, LLC v. Jones*, 720 N.W.2d 352, 358 (Minn. App. 2006) (quotation omitted).

Florin-Clemants's first argument is that he needed more time to acquire transcripts from the guardianship proceeding to demonstrate that Yess was unwilling to make repairs to the home. As discussed above, the issues surrounding Seward's guardianship were beyond the scope of the eviction proceeding. And it is not apparent that Florin-Clemants's testimony in the guardianship proceeding about the repairs would have contained "exculpatory evidence," as he asserts. Thus, Florin-Clemants has failed to show that the absence of transcripts from the guardianship dispute would prejudice the outcome of the eviction trial. *See id.*

Likewise, Florin-Clemants provides no apposite legal authority in support of his claim that he had a right to counsel in this eviction action at the time of trial. Instead,

12

Florin-Clemants cites a number of cases assessing whether a district court should have granted a *criminal* defendant a continuance to acquire legal representation. Absent any authority suggesting that a defendant in an eviction action enjoys a right to counsel, Florin-Clemants's argument is unavailing. *See Scheffler v. City of Anoka*, 890 N.W.2d 437, 451 (Minn. App. 2017) ("An assignment of error on mere assertion, unsupported by argument or authority, is forfeited and need not be considered unless prejudicial error is obvious on mere inspection.").

Regardless, Florin-Clemants had ample time to secure transcripts and counsel prior to trial. He received the notice to quit on December 28, 2022. Then, after he did not vacate, Florin-Clemants received the eviction summons and complaint on April 20, 2023. And the eviction trial was not held until May 26, 2023. In other words, Florin-Clemants had notice of the need to vacate approximately five months before the eviction trial, and he had over a month to prepare for the eviction trial after it was scheduled. We are therefore not persuaded that the outcome of the trial was prejudiced by the district court's denial of his motions for a continuance. Thus, the district court did not clearly abuse its discretion by denying Florin-Clemants's motions for a continuance. *See Jones*, 720 N.W.2d at 358.

**Affirmed.**