THEODORE NELSON v. GUST A. JOHNSON AND ANOTHER.[1]

June 4, 1926.

No. 25,270.

**Charge erroneous as to burden of proof on holder of sheriff's certificate.**

1. In an action of unlawful detainer, brought against the mortgagors after the year of redemption had expired on the foreclosure of the mortgage, the sheriff's certificate of sale was prima facie evidence of title in the purchaser, and the burden was upon the mortgagors to show the invalidity of such title by proof, if such there be, that there was no default in the condition of the mortgage when the foreclosure was instituted. The instruction that the burden was on plaintiff, the holder of the sheriff's certificate, to show that there was something owing at the time the foreclosure proceeding was begun was erroneous.

**Judgment notwithstanding verdict denied.**

2. Whether $192 was received to pay an agreed commission for an extension of the matured mortgage was not so satisfactorily proven that plaintiff should have judgment notwithstanding the verdict, the record disclosing that there must be in the mortgagee's hands conclusive written evidence on the issue.

**Evidence of estoppel and ratification in conclusive.**

3. Neither estoppel nor ratification is conclusively shown against defendants.

Judgments, 33 C. J. p. 1186 n. 57.
Mortgages, 27 Cyc. p. 1488 n. 99; p. 1507 n. 86 New.

Action in unlawful detainer tried in the district court for Polk county on appeal from the municipal court of Crookston. There was a verdict for the defendants. Plaintiff appealed from an order, Watts, J., denying his motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*W. E. Rowe* and *Alexander Fosmark,* for appellant.
*Halvor Steenerson* and *Theodore F. Neils,* for respondents.

[1] Reported in 209 N. W. 320.

HOLT, J.

Appeal from an order denying plaintiff's motion in the alternative for judgment or a new trial.

The action was one of unlawful detainer, tried in the district court upon appeal from the municipal court of Crookston. The complaint alleged a mortgage given by defendants, default therein, its due foreclosure, the expiration of the time of redemption, the acquisition by plaintiff of the title of the purchaser at the foreclosure sale, the demand of possession from defendants and their refusal. The answer interposed in the district court admitted the allegations of the complaint, except it set up in substance that on January 13, 1922, there was an extension of 5 years from December 2, 1921, in which to pay the mortgage in consideration of the mortgagors paying one year's interest in advance, the amount being $192; that this amount was then paid, and interest coupons for the five years' extension executed by defendants and accepted by the mortgagee; that notwithstanding such payment of interest the mortgagee claimed default in the payment thereof, and proceeded to foreclose when there was nothing due, wrongfully asserting that the $192 so paid was paid as commission for granting the extension, although there never was any agreement for a commission. The reply denied that there was anything paid upon the interest falling due on the mortgage on December 2, 1922.

Plaintiff offered the mortgage, the mortgage foreclosure proceedings, the sheriff's certificate, the assignment thereof, and by the testimony of defendants the refusal, after redemption expired, to vacate the premises, and rested. Defendants proved the extension of the mortgage, which fell due December 2, 1921, by the interest coupons given for the five years' extension from that date. Of course the promise to pay interest by the execution and delivery of the coupons for the five year period was sufficient consideration for the extension, but defendants claimed that an additional consideration was exacted in that the first year's interest of the extension was required to be paid in advance, and that this was done, $385 being paid on January 13, 1922, which sum paid the $192 interest which

fell due at the maturity of the mortgage on December 2, 1921, and one dollar for exchange and $192 a year's interest in advance as agreed. Plaintiff, on the other hand, contended that the last-named sum was a commission of 6 per cent charged for granting the extension. So there was no dispute of this sum of $192 being received by the mortgagee at the time when there was nothing due it, unless there was an agreement to pay commission, or unless it was received as payment in advance of the interest from December 2, 1921, to December 2, 1922.

That there was an extension given, we think was conclusively proven by the introduction of the coupon interest notes for five years subsequent to December 2, 1921. These coupon notes contain this clause "being interest on my principal note of $3,200 reduced to $....... Dated Dec. 2nd, 1916, the time for the payment of which has been extended to December 2nd, 1926." These coupon notes were sent to and accepted by the mortgagee. Hence the sole question for the jury was whether the $192 so received by the mortgagee in January, 1922, was payment in advance of the first year's interest for the extension period; if it was, there was nothing due when the foreclosure was instituted and the proceeding was unauthorized and void.

In charging the jury the court said: "Whilst generally speaking if a payment is claimed, it is necessary to set it up in the pleadings and prove it by a preponderance of evidence in the case, my view of it is in this case that it is necessary for plaintiff to prove there was something owing on the mortgage at the time the mortgage foreclosure proceedings were started before the bank which foreclosed it had the right to foreclose it." G. S. 1923, § 9622, made the sheriff's certificate of sale herein "prima facie evidence of title in fee thereunder in the purchaser at such sale, his heirs or assigns, after the time for redemption therefrom has expired." The effect thus given the sheriff's certificate introduced by plaintiff was a prima facie right to a verdict, and it became necessary for defendants to establish as a defense that nothing was owing when the foreclosure was instituted, but the instruction quoted erroneously stated

that it was necessary for plaintiff to prove that something was owing. This leads to a new trial. The writer is of the opinion that the error was not prejudicial, for the reason that the receipt of the $192 was conceded. Therefore since the jury found no agreement to pay an extension commission, that $192 remained in the mortgagee's hands and must be applied in payment of the interest which fell due December 2, 1922. So applied there was no default when the foreclosure was instituted.

But plaintiff contends he was entitled to a directed verdict and that the order should be reversed with directions to grant him judgment notwithstanding the verdict. Several grounds are urged. There does not seem to be any merit in the contention that the extension agreement, being for five years, must be expressed in writing to be valid under the statute of frauds. We think the interest coupons, prepared and sent to defendants by the mortgagee and accepted by it, when executed and returned by the mortgagors and which contain the clause above quoted, satisfied the statute. Nor do we sustain the claim that the terms of the extension agreement are conclusively established by a letter written by the mortgagee three months after a dispute arose as to the application of the $385 received from the mortgagor in January, 1922.

It appears that the mortgagor, Gust A. Johnson, was the one who obtained the original loan, paid the interest and transacted all the business in respect to the loan. He was a customer of the bank which A. D. Cronquist was conducting. Plaintiff was the president of a rival bank at the same little town, Erskine, Minnesota. When Johnson needed this loan in 1916, he went to Cronquist, who obtained a blank application from an agent of the mortgagee. The application was filled out, accepted, the loan of $3,200 made and the mortgage notes and interest coupons were executed by defendants. Thereafter the interest was always paid to Cronquist, remitted to the mortgagee, and, a few days after each coupon was paid, it was returned to Cronquist and by him delivered to Johnson.

In November, 1921, shortly before the loan matured, Johnson asked Cronquist to see if an extension could be obtained. Some

time thereafter he was informed, so he testified, that it might be had upon paying a year's interest in advance. He had not paid the interest which fell due December 2, 1921, at the maturity of the loan, and had not the money needed nor would Cronquist's bank lend him the amount. However on account of some subsequent mortgages held either by that bank or by plaintiff or his bank, Cronquist had requested plaintiff to assist Johnson with the money. When the mortgagee signified that the extension could be had, plaintiff and Johnson were notified and came to Cronquist's bank January 13, 1922. It is there, those three being present, that Johnson testified as stated that he was informed that the extension could be had upon paying one year's interest in advance and that plaintiff would loan him the money needed, $385. This was done, and the amount remitted by Cronquist to the mortgagee. Some few days after, the coupons were forwarded to Johnson and wife for signature. These were no doubt prepared by the mortgagee, and dated January 14, 1922.

Plaintiff and Cronquist deny that Johnson was informed that he was to pay interest in advance in order to have the extension, and it is difficult to find an excuse for the execution and delivery by Johnson and wife of the first year's coupon if it was already paid by the $385 remitted. But we think the question was for the jury, especially since the record discloses that there must be available conclusive written evidence of what really was the agreement, and which must be assumed plaintiff, as successor to the mortgagee, could readily have produced. We refer to the letter written by Cronquist to the mortgagee asking for the extension, and the mortgagee's reply thereto. The letter of Cronquist of April 17 to Johnson after the dispute arose and the so-called receipt from the mortgagee were both self-serving declarations made after the transaction and are far from satisfactory evidence. The letter by Cronquist to the mortgagee asking for the receipt was not produced. There was some attempt to account for the letter written by the mortgagee to Cronquist, in answer to his asking for the extension, so as to enable Cronquist to testify as to its contents, but it is hardly to be ex-

plained how as able an attorney as the one who represented plaintiff should not have secured from the mortgagee the copy thereof which undoubtedly is kept by a company like the mortgagee, and so the best secondary evidence could have been had instead of having recourse to the unreliable memory of someone after the lapse of several years.

It does not seem very important, as the issue stood at this trial whether or not Cronquist was the agent of defendants only. The writer assumes that the proof is conclusive that he acted for defendants alone. The extension was had, and the only question was what was to be done with the $192 concededly in the mortgagee's hands. No doubt, as stated, there is written evidence in the hands of the mortgagee as to this, which should determine the issue conclusively regardless of whose agent Cronquist was. It was not produced. The only evidence offered was the subsequent self-serving declarations, that the mortgagee was to have a commission. It is plain that on such a record plaintiff should not have judgment notwithstanding the verdict.

It is claimed estoppel was conclusively proven. True in April, 1922, defendants knew that the mortgagee had undertaken to claim the $192 as a commission and took no legal step to stop the foreclosure, the institution of which they had actual knowledge. We are not prepared to say that a mortgagor must resort to legal means to stop a foreclosure proceeding which is wholly unauthorized and void because no default in the conditions of the mortgage has occurred or be estopped to question it afterwards. If estoppel be in the case it does not appear as a question of law. Johnson did consult an attorney, complained to plaintiff and Cronquist and got no comfort. The attorney to be sure testified that he was not told the story told by Johnson on the witness stand, but that would be for a jury. We do not think plaintiff should have judgment notwithstanding the verdict on the ground of estoppel being established conclusively as a proposition of law. What is said about estoppel applies as well to the claim of ratification by conduct after the information of the mortgagee's position in April, 1922.

For error in the charge first above noted a new trial should be had. Order reversed and a new trial granted.

STONE, J. (concurring.)

The controversy is whether the $192 paid by Johnson was paid as interest in advance or as a commission for extending the loan. The opinion holds that the evidence made this a question for the jury.

It is conceded that at Johnson's request Cronquist wrote the mortgage company for the terms on which they would extend the loan for another five years and received a reply stating the terms; that these terms were accepted by sending the required payment; and that thereafter the mortgage company mailed to Cronquist for execution interest coupons covering the full period of the extension and received them back properly executed by Johnson. There is no claim that any suggestion was ever made to the mortgage company to change or vary the terms stated in its letter and the extension agreement was consummated on those terms. The only evidence in the record as to the contents of this letter is the testimony of Cronquist who says that the mortgage company wrote: "We will extend this loan for a period of five years at the rate of six per cent interest and cash commission of six per cent," and that he so informed Johnson. Although Cronquist says that he either gave the letter to Johnson or read it to him, Johnson denies ever seeing it. Cronquist's statement that the payment of a commission was required is corroborated by all the other evidence in the case, except the statement of Johnson that Cronquist told him that the mortgage company would grant the extension if he paid a year's interest in advance. Cronquist denies making any such statement.

Cronquist was Johnson's agent. He testified that neither he nor his bank were, or ever had been, the agents of the mortgage company, and there is no other evidence on that question. The mortgage company had no knowledge of what transpired between Johnson and Cronquist and could not be affected by it. Johnson's statement was not evidence as against the mortgage company, and it seems to me

that a finding that the loan was to be extended on payment of a year's interest in advance could not be sustained.

The mortgage company was not a party to the suit; neither was Cronquist or his bank. This may explain the failure to produce the documentary evidence. As such evidence, practically conclusive as to the fact, may be produced at another trial, a new trial is proper. But on the record as it stands there should have been a directed verdict for plaintiff.

DIBELL, J. (concurring.)
I concur in the views of Mr. Justice Stone.