**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1037**

Federal Home Loan Mortgage Corporation,
Respondent,

vs.

Gary E. Mitchell, et al.,
Appellants,

John Doe, et al.,
Defendants.

**Filed March 30, 2015**
**Affirmed**
**Smith, Judge**

Scott County District Court
File No. 70-CV-13-18934

Samuel R. Coleman, Schiller & Adam, P.A., St. Paul, Minnesota (for respondent)

William B. Butler, Butler Liberty Law, LLC, Minneapolis, Minnesota (for appellants)

Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and
Smith, Judge.

**S Y L L A B U S**

1.  Holder of sheriff's certificate of sale suffers injury-in-fact when former owners of
the property sold at the sheriff's sale remain in possession of the property after expiration
of the redemption period, giving holder of sheriff's certificate of sale standing to bring an
eviction action.

2. Former owners remaining in possession of property after a foreclosure and sheriff's sale are not "tenants" within the meaning of Minn. Stat. § 504B.121 (2014) in the absence of a lease agreement with new owner.

3. A district court's discretion to grant a stay in an eviction action pending resolution of a related parallel civil action is only guided by *Bjorklund v. Bjorklund Trucking, Inc.*, 753 N.W.2d 312 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008), when the parallel action involves a claim of a breach of the agreement that gave the present possessor the right of possession.

## O P I N I O N

**SMITH**, Judge

We affirm the district court's grant of summary judgment to respondent because appellants' claims lie outside the scope of the summary nature of an eviction action. We also affirm the district court's denial of an unconditional stay of the eviction because appellants do not contend that they did not default on their mortgage or that they lack an alternative forum to litigate their other claims.

## FACTS

In March 2002, appellants Gary and Leila Mitchell executed a mortgage of their home in favor of Signal Bank. Shortly afterward, Signal Bank assigned its interest to Wells Fargo Home Mortgage.

Wells Fargo initiated foreclosure proceedings against the property in November 2012. Wells Fargo posted a newspaper advertisement of the foreclosure, and it notified the Mitchells of the impending foreclosure in December 2012. It also notified them that

the property would be sold at a sheriff's sale on February 5, 2013 unless they brought their mortgage payments up-to-date.

The property was sold to Wells Fargo at a sheriff's sale on February 5, 2013. Wells Fargo obtained the sheriff's certificate of sale, and the Mitchells did not redeem. Wells Fargo then conveyed its interest in the mortgage to the Federal Home Loan Mortgage Corporation (Freddie Mac) on August 7, 2013. The Mitchells remained in possession of the property.

On October 3, 2013, Freddie Mac filed an eviction action in district court, citing its receipt of Wells Fargo's interest in the property as its interest. The Mitchells answered, arguing that Freddie Mac lacked standing and that the foreclosure was void.

Noting that the Mitchells' counsel based their answer solely on arguments that had been repeatedly rejected by multiple state and federal courts, Freddie Mac moved the district court for summary judgment. The district court granted the motion on June 5, 2014, ruling that the Mitchells' claims were outside the scope of an eviction action. The district court also denied the Mitchells' motion for an unconditional stay of the eviction.

## ISSUES

I. Did Freddie Mac have standing and legal capacity to bring an eviction action?

II. Did the district court err by granting summary judgment to Freddie Mac?

III. Did the district court abuse its discretion by denying an unconditional stay of the eviction?

# ANALYSIS

## I.

The Mitchells first challenge Freddie Mac's standing and legal capacity to bring an eviction action. "Standing is a legal requirement that a party have a sufficient stake in a justiciable controversy to seek relief from a court." *Enright v. Lehmann*, 735 N.W.2d 326, 329 (Minn. 2007). A party may gain standing either by suffering an injury-in-fact or by virtue of a legislative enactment granting standing. *Id.* We review de novo whether a party has standing. *Builders Ass'n of Minn. v. City of St. Paul*, 819 N.W.2d 172, 176 (Minn. App. 2012).

The purchaser of a sheriff's certificate acquires a vested ownership interest in the property, subject to divestment arising from the exercise of any redemption rights held by the foreclosed owner. *See Harbal v. Fed. Land Bank of St. Paul*, 449 N.W.2d 442, 447 (Minn. App. 1989) (stating this principle in the context of an agricultural-land foreclosure), *review denied* (Minn. Feb. 21, 1990). Under Minn. Stat. § 580.12 (2014), "[w]hen any sale of real property is made under a power of sale contained in any mortgage, the officer shall make and deliver to the purchaser a certificate" and, after the certificate has been recorded and the redemption period has expired, it "shall operate as a conveyance to the purchaser or the purchaser's assignee of all the right, title, and interest of the mortgagor in and to the premises named therein." Further, "[e]very sheriff's certificate of sale made under a power to sell contained in a mortgage shall be . . . *prima facie evidence of title in fee* thereunder in the purchaser at such sale . . . ." Minn. Stat. § 580.19 (2014) (emphasis added).

4

The Mitchells assert that Freddie Mac lacked standing to bring the eviction action because its foreclosure was void. They acknowledge that a certificate of a sheriff's sale is prima facie proof of title, but cite *Casey v. McIntyre*, 45 Minn. 526, 48 N.W. 402 (1891), and *Nelson v. Johnson*, 167 Minn. 430, 209 N.W. 320 (1926), to argue that defects in the sheriff's sale rebut that presumption. But these cases do not support the Mitchells' argument. *Casey* involved a plaintiff who had not received notice of the foreclosure proceedings and resulting sheriff's sale; it did not hold that a properly noticed foreclosure and sheriff's sale was void based on the title challenges the Mitchells raise here. *See* 45 Minn. at 529-30, 48 N.W. at 403. And the *Nelson* court held only that a defendant can overcome the presumption of title validity from a sheriff's-sale certificate by affirmatively proving that no default occurred and that *any* foreclosure was therefore "wholly unauthorized and void;" it does not support the Mitchells' claim that a certificate-holder lacks standing whenever a plaintiff challenges its title on the basis of a defective assignment. *See* 167 Minn. at 435, 209 N.W. at 322. Neither case applies here. The record contains no claim that the Mitchells did not default on their mortgage, and it is undisputed that they received proper notice of both the foreclosure and the sheriff's sale. By remaining in possession of the property after the expiration of the redemption period, the Mitchells invaded Freddie Mac's legally protected interest in the property. We therefore hold that Freddie Mac suffered an injury-in-fact that gave it standing to commence an eviction action against the Mitchells.

Related to their standing argument, the Mitchells also assert that Freddie Mac lacked legal capacity to bring an eviction action, alleging that Freddie Mac had failed to

5

prove that it had properly acquired or recorded its interest. But "[e]very sheriff's certificate of sale made under a power to sell contained in a mortgage shall be *prima facie evidence that all the requirements of law in that behalf have been complied with . . . .*" Minn. Stat. § 580.19 (emphasis added). Since an eviction action "merely determines the right to present possession and does not adjudicate the ultimate legal or equitable rights of ownership possessed by the parties," *Dahlberg v. Young*, 231 Minn. 60, 68, 42 N.W.2d 570, 576 (1950); *cf. Deutsche Bank Nat'l Trust Co. v. Hanson*, 841 N.W.2d 161, 166 (Minn. App. 2014) ("Resolving a challenge to the validity of [a] foreclosed mortgage is not essential to an eviction action."), their challenge to Freddie Mac's legal capacity to bring an eviction action is meritless.

The Mitchells also argue that the district court was required to accept the validity of their standing and defective-title arguments as "adjudicative facts" under Minn. R. Evid. 201(d). A district court's decision whether to take judicial notice of proffered facts is an evidentiary ruling that we review only for abuse of discretion. *See In re Zemple*, 489 N.W.2d 818, 820 (Minn. App. 1992). A district court is only required to accept adjudicative facts that are "not subject to reasonable dispute" or are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Minn. R. Evid. 201(b).

Although the Mitchells proffered records and statements from Freddie Mac's website that might (if relevant within the limited scope of an eviction action) have qualified as adjudicative facts, the inferences they draw regarding Freddie Mac's standing, legal capacity, and the validity of its interest in the property are arguments, not

6

facts. Those arguments have been vigorously disputed in this and numerous other proceedings involving the Mitchells' attorney. Moreover, the lengthy list of appellate opinions rejecting similar or identical arguments made by the Mitchells' attorney amply demonstrates that the merits of the Mitchells' arguments can be reasonably questioned. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Lee*, No. A11-1890, 2012 WL 3023437 (Minn. App. July 23, 2012); *CitiMortgage, Inc. v. McGlory*, No. A12-0415, 2012 WL 3641360 (Minn. App. Aug. 27, 2012); *Wells Fargo Bank, NA, v. Rother*, No. A12-0003, 2012 WL 3641292 (Minn. App. Aug. 27, 2012); *Value Props. v. Dunbar*, No. A12-0646, 2012 WL 5896824 (Minn. App. Nov. 26, 2012); *Fed. Nat'l Mortg. Ass'n v. Forseth*, No. A12-0691, 2013 WL 141698 (Minn. App. Jan. 14, 2013); *Bank of N.Y. Mellon v. Cordes*, No. A12-0869, 2013 WL 400142 (Minn. App. Feb. 4, 2013); *Fed. Nat'l Mortg. Ass'n v. Lysne*, No. A12-1385, 2013 WL 599464 (Minn. App. Feb. 19, 2013); *Nationwide Advantage Mortg. Co. v. Pehlke*, No. A13-0569, 2013 WL 5976082 (Minn. App. Nov. 12, 2013); *Wells Fargo Bank, N.A. v. Perez*, No. A13-1418, 2014 WL 1126415 (Minn. App. Mar. 24, 2014); *Fed. Home Loan Mortg. Corp. v. Briggs*, No. A13-2089, 2014 WL 3397124 (Minn. App. July 14, 2014); *Bank of Am., N.A. v. Smith*, No. A13-2299, 2014 WL 3801306 (Minn. App. Aug. 4, 2014); *Fed. Home Loan Mortg. Ass'n v. Robinson*, No. A14-0023, 2014 WL 3802216 (Minn. App. Aug. 4, 2014); *Great S. Bank v. Guzman*, No. A14-0248, 2014 WL 4056254 (Minn. App. Aug. 18, 2014); *U.S. Bank Nat'l Ass'n v. Twigg*, No. A13-2237, 2014 WL 4289194 (Minn. App. Sept. 2, 2014); *Fed. Home Loan Mortg. Corp. v. Mikelson*, No. A14-0915, 2015 WL 134166 (Minn. App. Jan. 12, 2015); *CitiMortgage, Inc. v. Kraus*, No. A14-0922, 2015 WL 134180 (Minn. App. Jan 12,

2015).  The district court therefore did not abuse its discretion by implicitly denying their request to take judicial notice of adjudicative facts.

## II.

The Mitchells contend that the district court erred by granting summary judgment to Freddie Mac.  We review a district court's grant of summary judgment de novo, "determin[ing] whether there is any genuine issue of material fact and whether the district court erred in its application of the law."  *Dahlin v. Kroening*, 796 N.W.2d 503, 504 (Minn. 2011).

The Mitchells assert that the district court's basis for granting summary judgment—that the Mitchells' claims were outside the scope of an eviction action—was erroneous.  "Eviction actions are summary proceedings that are intended to adjudicate only the limited question of present possessory rights to the property."  *Hanson*, 841 N.W.2d at 164.  "Parties generally may not litigate related claims in an eviction [action]." *Id.*  The purpose of an eviction action is only to determine "present possession" and "not to adjudicate the ultimate legal or equitable rights of ownership."  *Dahlberg*, 231 Minn. at 68, 42 N.W.2d at 576.  Challenges to the validity of a foreclosure may be litigated in an eviction action "*only*" when it is the sole forum available.  *Fraser v. Fraser*, 642 N.W.2d 34, 40-41 (Minn. App. 2002) (emphasis added).

The Mitchells do not claim that the eviction action is the only forum available to them to litigate their challenges to the foreclosure.  Rather, they cite Minn. Stat. § 504B.122 and *Real Estate Equity Strategies, LLC v. Jones*, 720 N.W.2d 352 (Minn. App. 2006), to support a claim that they are holdover tenants statutorily permitted to

challenge Freddie Mac's title as a defense to its eviction action. But no section 504B.122 exists in the Minnesota Statutes.

Assuming that the Mitchells intended to cite Minn. Stat. § 504B.121 (as applied in *Jones*), their argument fails because they are not tenants within the meaning of that section. Minn. Stat. § 504.121 generally prohibits tenants "under a lawful lease" from defending against an eviction action based on a claim that the landlord lacks title. But it creates an exception for tenants who, "prior to entering into the lease, possessed the property under a claim of title that was adverse or hostile to that of the landlord." *Id.* Chapter 504B defines a "residential tenant" as "a person who is occupying a dwelling . . . *under a lease or contract* . . . ." Minn. Stat. § 504B.001, subd. 12 (2014) (emphasis added). It also defines "tenancy at will" as "a tenancy in which the tenant holds possession *by permission of the landlord*." *Id.*, subd. 13 (2014) (emphasis added).

Unlike the tenants in *Jones*, the Mitchells did not enter into a lease with the owners of the property after the foreclosure. *Cf.* 720 N.W.2d at 353-54 (describing tenancy arrangement after foreclosure). Since the Mitchells did not enter into a lease with either Wells Fargo or Freddie Mac after foreclosure and did not have either Wells Fargo's or Freddie Mac's permission to remain in possession of the property after foreclosure, they are not tenants for purposes of Minn. Stat. § 504B.121. *See Fed. Land Bank of St. Paul v. Obermoller*, 429 N.W.2d 251, 258 (Minn. App. 1988) (holding under a precursor to Minn. Stat. § 504B.121 that former owners are not "tenants" after a foreclosure), *review denied* (Minn. Oct. 26, 1988). The provisions of Minn. Stat. § 504B.121 therefore do not apply here, and the district court did not err by granting

summary judgment to Freddie Mac. *Cf. Jones*, 720 N.W.2d at 358 (holding that Minn. Stat. § 504B.121 does not deprive the district court subject-matter jurisdiction over ownership claims in an eviction action when a tenant "challenges a landlord's title").

## III.

The Mitchells next argue that the district court abused its discretion by denying their motion for a stay of the eviction pending resolution of a parallel proceeding addressing their title challenges.[1] "District courts have discretion when deciding whether to grant a stay in an eviction." *Hanson*, 841 N.W.2d at 164. "We review [its] decision not to grant a stay only for abuse of discretion." *Id.* "[A] party attempting to stay an eviction action must provide a case-specific justification for granting a stay." *Id.* "A dispute regarding the underlying mortgage is not such a reason." *Id.* "And the district court is not obligated to grant a stay even when the party does provide a case-specific reason." *Id.*; *see also Fed. Home Loan Mortg. Corp. v. Nedashkovskiy*, 801 N.W.2d 190, 192 (Minn. App. 2011) ("Even where a moving party provides the district court with a reason for a stay, a stay is not required.").

The Mitchells cite *Bjorklund*, 753 N.W.2d at 319-20, to support their argument that a district court is required to grant a stay in an eviction action pending the resolution of a pending civil action involving a title challenge. In *Hanson*, this court rejected an

---

[1] The existence of this parallel proceeding addressing the Mitchells' title claims reinforces our holding that their title claims are outside the scope of an eviction proceeding because another forum is available to them. *See Fraser*, 642 N.W.2d at 40.

interpretation of *Bjorklund* identical to that asserted by the Mitchells' attorney[2] here, noting that "*Bjorklund* presented an unusual factual scenario that emerged from a dispute about the ownership of shares in a family-run corporation." *Hanson*, 841 N.W.2d at 165. We observed that the *Bjorklund* district court's refusal to grant a stay was an abuse of discretion only because the "alleged agreement to sell the property" that was at issue in the pending proceeding "was central to the eviction" and the eviction court could not determine whether there was *any* basis for eviction until the terms of the parties' agreement had been determined by the district court in the parallel civil action. *Id.*

---

[2] Although this court has rejected the arguments raised by the Mitchells' attorney more than 20 times in unpublished and order opinions, he continues to bring identical claims to this court. When asked at oral argument whether he could recall any positive outcome for any of his clients, he cited a case where the delay caused by pursuing the appeal had allowed his clients to remain in possession of the property for a few more months. We note that Minn. R. Civ. P. 11.02 requires attorneys to certify that they are not filing actions "for any improper purpose, such as . . . to cause unnecessary delay," and that Minn. R. Civ. P. 11.03 authorizes district courts to sanction attorneys who violate rule 11.02. The Mitchells' attorney conceded during oral argument that this court has similar authority to impose sanctions for frivolous appeals. Without deciding the issue here, we note that a statute authorizes "a court," either by motion of a party or on its own motion, to impose sanctions for filings made for the purpose of causing delay or that are based on frivolous arguments. *See* Minn. Stat. § 549.211, subds. 2, 4 (2014); *see also* Minn. R. Civ. App. P. 138 (authorizing the court of appeals to award double costs to respondent when "an appeal delays proceedings on a judgment of the trial court and appears to have been taken merely for delay"); Minn. R. Civ. App. P. 139.06, subd. 1 (allowing the court of appeals to award "reasonable attorneys' fees to any party" on its own motion). Further iterations of frivolous arguments rejected as meritless by this court may compel this court to consider the full extent of its sanctioning authority.

We also note that the Mitchells' attorney conceded during oral argument that he has charged clients a total of at least $50,000 for pursuing the arguments that have been repeatedly rejected by this court. *Cf.* Minn. R. Prof. Conduct 1.5(a)(4) (requiring that attorneys consider "the results obtained" when charging clients), 3.1 (mandating that attorneys "not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous").

The situation in *Bjorklund* was thus similar to that in *Nelson*, where the merits of an eviction action depended entirely on whether the current possessor of the property was in breach of an agreement allowing them to possess it. *Cf. Nelson*, 167 Minn. at 435, 209 N.W. at 322. In both cases, determining whether the actual terms of the agreement had been violated (either by addressing the issue in the eviction action itself, as in *Nelson*, or by staying the eviction action pending a parallel action, as in *Bjorklund*) was an essential prerequisite to resolving the eviction action because the eviction action otherwise risked dispossessing a party that had never been legitimately subject to dispossession at all. *Bjorklund* does not, however, support the Mitchells' argument that other issues—such as the legitimacy of an assignment, whether an assignment has been properly recorded, and which among several possible parties may bring the eviction action—must be resolved before resolving an eviction action brought by a holder of a sheriff's certificate of sale. *See Hanson*, 841 N.W.2d at 165 ("A dispute over ownership alone does not show necessity under *Bjorklund*."); *accord Amresco Residential Mortg. Corp. v. Stange*, 631 N.W.2d 444, 446 (Minn. App. 2001) ("Using the alternate procedure instead of expanding the eviction proceeding accords with the appellate courts' prior determinations that the district court should uphold the summary nature of eviction proceedings."). Rather, "a stay is not necessary in an eviction action when adequate alternatives are available, such as filing a notice of lis pendens or seeking an injunction from the court where other claims are pending." *Hanson*, 841 N.W.2d at 166.

The Mitchells do not contend that they were not in default on their mortgage, nor do they contend that they lack alternatives for addressing their challenges to Freddie

12

Mac's title. We therefore conclude that *Bjorklund* does not apply here, and the district court did not abuse its discretion by denying the Mitchells' motion for a stay of the eviction.

## DECISION

Because the Mitchells' challenges to Freddie Mac's property interest were outside the scope of an eviction action, the district court did not err by granting summary judgment to Freddie Mac. And because the issues the Mitchells raise do not involve a claim that they had not defaulted on their mortgage or that they lacked alternatives for pursuing their challenges to Freddie Mac's title, the district court did not abuse its discretion by denying their motion for a stay of the eviction.

**Affirmed.**