*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1942**

Environmental Trust, LLC,
Respondent,

vs.

Hi-Tek Rubber, Inc.,
Defendant,

Gordon Cell,
Appellant.

**Filed August 22, 2016**
**Reversed**
**Kirk, Judge**

Isanti County District Court
File No. 30-CV-14-28

Dwight G. Rabuse, DeWitt Mackall Crounse & Moore, S.C., Minneapolis, Minnesota (for respondent)

Paula Duggan Vraa, Stephanie L. Chandler, Larson King, LLP, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Connolly, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Respondent Environmental Trust, LLC (Environmental) sued defendant Hi-Tek

Rubber, Inc. (Hi-Tek) and its president, appellant Gordon Cell. Cell was sued for breach

of contract, unjust enrichment, breach of statutory and common-law fiduciary duty, conversion, fraud, and intentional and negligent misrepresentation. A jury found in favor of Environmental on all counts and awarded damages. Cell moved for JMOL or for a new trial. Environmental moved for attorney fees and costs. The district court filed an order awarding Environmental attorney fees and costs and denying Cell's motion for JMOL. On appeal, Cell argues that the district court erred when it denied his motion for JMOL because Environmental lacked standing to sue him in his personal capacity and because Environmental did not suffer an injury-in-fact. Cell also argues that the district court erred when it awarded attorney fees and costs to Environmental. We reverse.

## FACTS

Cell formed Hi-Tek in 1999 and has since served as its president. Cell has always held a significant ownership interest in Hi-Tek. From 1999-2007, Hi-Tek worked to develop and manufacture rubber roof shingles from used tires, but failed to become profitable.

In 2007, Hi-Tek needed additional funding and approached Guaranty Bank of Iowa to explore funding options. Guaranty Bank agreed to issue a line of credit of up to $1,000,000, for the purpose of funding Hi-Tek, if it was backed by personal guaranties by qualified individuals.[1] Ten of the 12 original guarantors of the line of credit were Hi-Tek shareholders. Cell hired an attorney to assist him in forming Environmental as an

---

[1] The highest the line of credit ever guarantied and extended to Environmental was $650,000.

2

organization comprised of personal guarantors investing in Hi-Tek.  All 12 of the original Environmental members executed guaranties to secure a portion of the line of credit.

In November 2007, the Articles of Organization for Environmental were filed. Cell signed the Articles of Organization.  On December 28, Cell signed Environmental's Operating Agreement as one of the three original governors.  Cell also served as the president and the chief manager of Environmental.  Cell remained president of Environmental until he resigned on January 21, 2011.  Cell was never an Environmental member.

According to its Member Control Agreement (MCA), Environmental "was created as a financing tool for Hi-Tek."  The only members of Environmental were the personal guarantors of the line of credit to fund Hi-Tek.  Each guarantor guaranteed $55,000 as a "contribution."  The MCA provided that the guarantors had no right against Environmental to return any of the funds paid pursuant to the personal guaranties. Furthermore, Environmental's MCA included the following provision:

> **2.5  Loan to Hi-Tek.**  The Members hereto understand and acknowledge that the purpose of procuring the Loan is, and will be, to provide financing to Hi-Tek.  As such, Hi-Tek and [Environmental] shall enter into a separate promissory note and security agreement for purposes of [Environmental] loaning said Loan amount to Hi-Tek.  Under no circumstances shall the Members or the Board of Governors of [Environmental] consent to the loan to Hi-Tek as herein described until such time as the aforementioned promissory note, security agreement and Option Agreement . . . between [Environmental] and Hi-Tek are properly executed and acknowledged.

Although Cell was not an Environmental member and did not sign the MCA, the MCA also contained the following provision granting him authority to handle Environmental's banking, as well as all financial transactions between Environmental and Hi-Tek:

> **6.1 Banking Authorization.** Pursuant to the terms of this Agreement Gordon Cell is hereby authorized, as President and Chief Manager, to open any such accounts with banks, trust companies and other financial institutions in the name and on behalf of [Environmental] as may be deemed necessary and appropriate for the conduct of [Environmental's] business, subject to the terms and conditions set forth herein. In addition, Gordon Cell is hereby authorized to sign or countersign checks, receipts, transfers, money orders and/or any other type of payment or withdrawal of funds or monies deposited to the credit of [Environmental] in such banks, trust companies, and other financial institutions designated by [Environmental], including but not limited to, Guaranty Bank and Trust, and to take any other action as deemed appropriate with respect to such accounts. Gordon Cell is also hereby authorized to facilitate any and all financial transactions between Hi-Tek and [Environmental].

Cell testified at trial that not all of Environmental's members signed the MCA. Two signed copies of the MCA were entered into evidence. Those MCAs were signed by three Environmental members: Wayne Engle, Eugene Dowie, and William Bishop. Additionally, Richard Christiansen, a fourth Environmental member, testified that he signed and returned his copy of the MCA. Cell testified that he never saw the MCAs signed by Bishop or by Christiansen. Cell also testified that he did not consider the MCA to be valid. Hi-Tek never secured the loan as required by § 2.5 of Environmental's

4

MCA. Cell testified that he never executed a promissory note for Hi-Tek in favor of Environmental and has never seen such a note.

In December 2007, prior to executing their guaranties, all 12 original Environmental members received a copy of the MCA from Cell. Christiansen testified at trial that he relied on the MCA's assurance that Hi-Tek would secure the loan with a promissory note to protect his investment. The personal guaranties provided that Guaranty Bank could pursue the guarantors directly if Hi-Tek defaulted on its repayment obligations, rather than pursuing collection from Environmental. In order to continue to use Environmental's line of credit, Hi-Tek was required to make interest payments on the loaned amount. Hi-Tek successfully made interest payments on Environmental's line of credit from 2008 through 2010.

Cell was also authorized, effective December 28, 2007, "as Chief Manager and President [of Environmental,] . . . to execute any and all documents necessary to obtain the loan/line of credit from Guaranty Bank as provided in the [MCA]." Cell signed the authorization as one of Environmental's governors.

In early 2011, Gary Young, the current president of Environmental, tried to locate the Hi-Tek promissory note required by Environmental's MCA. Cell told Young that he would look for it, and then later informed Young that the note did not exist. Beginning in January 2008, Cell began making withdrawals on Environmental's line of credit for immediate transfer to Hi-Tek despite knowing that there was not a promissory note or security agreement in place. Cell did not inform Environmental's members that he was using funds from the line of credit without executing a promissory note or security

5

agreement on behalf of Hi-Tek. Furthermore, Cell testified that he told Environmental's members that the line of credit would be used to promote the commercialization of Hi-Tek's product without disclosing that Hi-Tek had substantial unpaid debts, including judgments against Hi-Tek in favor of previous lenders.

When the line of credit was established, Hi-Tek had physical assets that could have been pledged to secure the line of credit. However, on March 15, 2009, a fire at Hi-Tek's Minnesota plant destroyed some of Hi-Tek's inventory and equipment. Following the fire, the facility suffered additional losses due to theft and vandalism. Hi-Tek's assets were not insured.

In April or May of 2009, following the fire, Cell recruited Barnett Brenner to become an additional Environmental member and to sign a stock-option agreement and a personal guaranty toward the line of credit. Cell also signed the Brenner stock-option agreement on behalf of Hi-Tek. The stock-option agreement referenced Environmental's MCA more than once. Cell did not inform Brenner that he considered the MCA to be invalid. Cell also failed to inform Brenner of the fire before Brenner executed a $110,000 personal guaranty toward the Environmental line of credit. Brenner first learned about Hi-Tek's lack of assets in late 2009 when he confronted Cell.

Funds from the line of credit were used for Hi-Tek's business expenses, including officer salaries, from 2008 through 2011. Cell's salary payments from Hi-Tek from 2008 through 2011 averaged $79,000 per year. Various members of Cell's family were also placed on Hi-Tek's payroll during that time period.

In July 2011, after learning that Hi-Tek had not executed a promissory note or security agreement in favor of Environmental, Young attempted to get Hi-Tek to execute the security documents as required by Environmental's MCA. Hi-Tek elected not to execute those documents and the money withdrawn from Environmental's line of credit remained unsecured.

In 2011, Hi-Tek could not pay on the interest payments and announced that it was going to default on the line of credit. To prevent default, the guarantors used their personal funds to make interest payments on the loan and to pay off the line of credit. The total amount of the loan plus interest repaid by Environmental's members was $675,730.39.

In 2014, Environmental sued Cell for breach of contract, unjust enrichment, breach of statutory and common-law fiduciary duty, conversion, fraud, and intentional and negligent misrepresentation. A jury found in favor of Environmental on all counts and awarded damages totaling $675,730.09. The district court filed an amended order awarding pre-judgment interest in the amount of $161,732.48. Cell moved for JMOL or for a new trial and Environmental moved for attorney fees and costs. The district court filed an order awarding Environmental attorney fees and costs and denying Cell's motion for JMOL. Cell appeals.

## DECISION

On appeal, Cell argues that the district court erred when it denied his motion for JMOL because Environmental lacked standing to sue him in his personal capacity and because Environmental did not suffer an injury.

"Standing is a legal requirement that a party have a sufficient stake in a justiciable controversy to seek relief from a court." *Fed. Home Loan Mortg. Corp. v. Mitchell*, 862 N.W.2d 67, 70 (Minn. App. 2015) (quoting *Enright v. Lehmann*, 735 N.W.2d 326, 329 (Minn. 2007)), *review denied* (Minn. June 30, 2015). A party's claim cannot be considered by a court if that party lacks standing. *Garcia-Mendoza v. 2003 Chevy Tahoe*, 852 N.W.2d 659, 663 (Minn. 2014). "The purpose of the standing requirement is to ensure that issues before the court will be vigorously and adequately presented." *State ex rel. Hatch v. Allina Health Sys.*, 679 N.W.2d 400, 404 (Minn. App. 2004) (quotation omitted). We review de novo whether a party has standing. *Mitchell*, 862 N.W.2d at 70.

"A party may gain standing either by suffering an injury-in-fact or by virtue of a legislative enactment granting standing." *Id.* In order to establish an injury-in-fact, a "plaintiff must show a concrete and particularized invasion of a legally protected interest." *Garcia-Mendoza*, 852 N.W.2d at 663 (quotation omitted). That injury must also "be fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Id.* "Standing is a jurisdictional issue that may be raised at any time." *Id.* "[T]he question of standing cannot be waived." *In re Horton*, 668 N.W.2d 208, 212 (Minn. App. 2003).

### A. Environmental did not suffer an injury-in-fact.

Cell points out that, because the guarantors signed the guaranties in their personal capacities rather than in their representative capacities as Environmental members, they were personally liable for those debts rather than the limited liability company (LLC). *See Jenista v. Burlington N. Airmotive, Inc.*, 388 N.W.2d 770, 772 (Minn. App. 1986)

8

(holding that business owner was personally obligated on a promissory note because he signed his name to it without indicating that he had signed it in his representative capacity).

Environmental contends that it suffered damages exceeding $650,000 because Guaranty Bank sought repayment of the loan first from Environmental, then, when Environmental could not pay, it called upon Environmental's members to honor the guaranties and repay the loan. Environmental also asserts that Cell caused this injury-in-fact by failing to execute the required promissory note or security agreement before drawing on the line of credit.

Environmental was never a party to the loan agreement or personal guaranties and never experienced harm or injury related to Cell's failure to secure the line of credit. Environmental was not required to pay on the line of credit, and there is no evidence in the record that Environmental experienced any negative consequences related to Hi-Tek's ultimate failure to repay the line of credit. At oral argument, Environmental argued that its credit score and ability to obtain future funding may have been negatively impacted, but there is no evidence of that in the record. Additionally, because the personal guarantors honored their repayment obligations, there was no default on the line of credit and Guaranty Bank was made whole. Because Environmental was not a party to the relevant agreements, and because Environmental did not experience an injury-in-fact, Environmental lacked standing to sue Cell.

Environmental argues in the alternative that, even if Environmental's members experienced the injury rather than Environmental, it still has standing to sue for the

9

benefit of its members because it is the entity capable of ensuring that the claims brought would be "vigorously and adequately presented." *Allina Health Sys.*, 679 N.W.2d at 404 (quotation omitted). But simply being able to vigorously litigate a claim "cannot substitute for a direct interest in the matter at issue." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 495 (Minn. 1996). Vigorous litigation of claims is the purpose of the standing requirement, not something that grants standing in and of itself. *In re Block*, 727 N.W.2d 166, 174 (Minn. App. 2007) ("The entity seeking standing must have a sufficient stake in a justiciable controversy to seek relief from a court, and the goal of this requirement is to ensure that issues before the courts will be vigorously and adequately presented." (quotations omitted)).

**B.     There is no legislative enactment granting Environmental standing.**

Environmental also points to Minn. Stat. § 322B.88 (2014) as a legislative source of standing in this case. It argues that Minn. Stat. § 322B.88 confers standing on Environmental and prevents Environmental's members from pursuing a claim under these circumstances. However, Minn. Stat. § 322B.88 provides that an LLC member "is not a proper party to a proceeding by or against [an LLC] except when . . . the proceeding involves a claim of personal liability or responsibility of that member and that claim has some basis other than the member's status as a member." Here, Environmental's members signed personal guaranties related to their Environmental membership, but not as Environmental members. The claims pursued by Environmental involved personal liabilities or responsibilities of the guarantors, and were based on the executed personal guaranties, not on their Environmental membership. Thus, Minn. Stat. § 322B.88 does

10

not prevent Environmental's members from suing, and does not grant Environmental standing to sue on their behalf.

Because Environmental was not a party to the relevant agreements, did not experience an injury-in-fact, and was not granted standing by Minn. Stat. § 322B.88, Environmental lacked standing to sue Cell, and the judgment against him must be reversed. Additionally, because Environmental should not have prevailed against Cell, the award of attorney fees and costs to Environmental must also be reversed.

**Reversed.**