*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0998**

In the Matter of the Welfare of the Children of: D. L. W.,
Commissioner of Human Services, Legal Custodian.

**Filed April 1, 2024**
**Affirmed**
**Reilly, Judge**[*]

Hennepin County District Court
File No. 27-JV-19-1107

Rhia Bornmann Spears, Spears Family Law, PLLC, Minneapolis, Minnesota; and

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota (for appellant)

Rachel L. Osband, Minnetonka, Minnesota (for respondent foster parents)

Mary F. Moriarty, Hennepin County Attorney, Mary M. Lynch, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County Human Services Department)

Patricia J. Stotzheim, St. Paul, Minnesota (for guardian ad litem)

        Considered and decided by Frisch, Presiding Judge; Segal, Chief Judge; and Reilly, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**REILLY**, Judge

In this adoptive-placement matter, appellant-grandmother challenges the district court's placement of her two grandchildren with nonrelative foster parents. Appellant-grandmother argues that the district court: (1) misapplied Minn. Stat. § 260C.607, subd. 6(e) (2022), when it failed to give preference to her as the children's relative; (2) erred when it failed to consider the administrative-law judge's (ALJ) report in making its adoptive-placement decision; and (3) erred when it considered her lack of mobility when it denied her adoptive-placement request. We affirm.

**FACTS**

In February 2018, respondent Hennepin County Human Services Department (the department) petitioned the district court to adjudicate D.L.W.'s two children in need of protection or services (CHIPS) and removed them from D.L.W.'s custody. The children were placed with their maternal grandmother, appellant K.H. (grandmother).

The elder child (now eight years old) "has been diagnosed with Autism Spectrum Disorder, Partial Fetal Alcohol Syndrome, Global Developmental Delay, and Other Trauma Stress Deprivation Disorder." And the younger child (now seven years old) "has been diagnosed with Global Developmental Delay, Adjustment Disorder, Partial Fetal Alcohol Syndrome, and Neurodevelopmental Disorder."

The district court adjudicated the children CHIPS in August 2018 and terminated the parental rights of both parents in January 2020. The children remained in grandmother's care.

2

While in grandmother's care, the department expressed concerns about the safety and development of the children. The district court summarized its multiple concerns, which included identified safety issues, grandmother's failure to attend scheduled appointments, attendance issues at the children's school, and grandmother's general ability to meet the special needs of the children.

Based on these ongoing concerns, in December 2020, the department determined that grandmother was no longer an appropriate placement option. The department developed a transition plan for the children to be moved to an alternative placement option and removed the children from grandmother's care. In May 2021, the department signed an adoption placement agreement[1] with the children's current nonrelative foster parents.

In July 2021, the department moved to have grandmother ruled out as a permanency resource for the children. Grandmother moved to intervene as a matter of right under Minn. R. Juv. Prot. P. 34.01, subd. 2, and have the children placed with her. After a hearing was held on the motion to intervene, the district court took the matter under advisement. An evidentiary hearing was held on the department's motion to rule grandmother out as a permanency option.

The district court denied the motion to intervene and granted the rule-out motion. In so doing, the district court determined that rule 34.01, subdivision 2, did not apply to

---

[1] "Adoption placement agreement" is defined by Minn. Stat. § 260C.603, subd. 3 (2022), as "the written agreement between the responsible social services agency, the commissioner, and the adopting parent which reflects the intent of all the signatories to the agreement that the adopting parent establish a parent and child relationship by adoption with the child who is under the guardianship of the commissioner."

3

grandmother's case and given the circumstances, the department's request to rule grandmother out as a permanency option was "adequately supported" by the record. Grandmother appealed.

In May 2022, this court ruled that the district court erred when it determined that grandmother did not meet the requirements for intervention as a matter of right, and that she was prejudiced as a result.[2] The district court's decision was reversed and remanded with instructions for the court to grant the motion to intervene and conduct a new hearing on the rule-out motion. On remand, the district court determined that grandmother had made a prima facie showing that the department was unreasonable in failing to place the children with grandmother as a relative adoptive-placement option.

An adoptive-placement hearing took place over seven days in the spring of 2023. In total, the district court heard the testimony of 16 witnesses and admitted over 100 exhibits. The district court denied grandmother's motion for adoptive placement. Grandmother appeals the district court's adoptive-placement decision.

## DECISION

### *Adoption-placement statute*

Grandmother argues that the district court abused its discretion when it misapplied the law and allowed a "side-by-side comparison" of grandmother and the nonrelative adoptive placement. According to grandmother, this misapplication of Minn. Stat. § 260C.607, subd. 6(e), resulted in undue prejudice.

---

[2] *In re Welfare of Child. of D.L.W.*, No. A21-1043, 2022 WL 1615284, at *1 (Minn. App. May 23, 2022).

4

This court reviews a district court's decision regarding whether the department unreasonably failed to make an adoptive placement for an abuse of discretion. *See* Minn. Stat. § 260C.607, subd. 6(a) (2022) (stating district courts "may" order relative adoptive placement if it finds department unreasonably failed to make requested placement); *In re Welfare of Child. J.D.T.*, 946 N.W.2d 321, 327-28 (Minn. 2020) (noting, in a juvenile-protection appeal, that a statute's use of "may" confers discretion on the district court).

"On appeal of a juvenile-protection order, we review the juvenile court's factual findings for clear error and its finding of a statutory basis for the order for abuse of discretion." *In re Welfare of Child of D.L.D.*, 865 N.W.2d 315, 321 (Minn. App. 2015) (reviewing order transferring legal custody of child), *rev. denied* (Minn. July 20, 2015); *see also* Minn. Stat. § 260C.607, subd 6(c), (e) (2022). A district court abuses its discretion when it makes a finding of fact that is unsupported by the evidence, misapplies the law, or delivers a decision that defies logic and the facts on record. *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022).

The clear-error standard of review "is a review of the record to confirm that evidence exists to support the decision." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 222 (Minn. 2021). When reviewing for clear error, appellate courts (1) view the evidence in the light most favorable to the findings, (2) do not reweigh the evidence, (3) do not find their own facts, and (4) do not reconcile conflicting evidence. *Id.* at 221-22; *see In re Welfare of Child of J.H.*, 968 N.W.2d 593, 601 n.6 (Minn. App. 2021) (applying *Kenney* on review of a juvenile-protection order), *rev. denied* (Minn. Dec. 6, 2021).

5

Section 260C.607, subdivision 6(e) provides that:

> The court shall review and enter findings regarding whether the agency, in making an adoptive placement decision for the child:
>
> (1) considered relatives for adoptive placement in the order specified under section 260.212, subdivision 2, paragraph (a); and
>
> (2) assessed how the identified adoptive placement resource and the moving party are each able to meet the child's current and future needs, based on an individualized determination of the child's needs, as required under sections 260C.212, subdivision 2, and 260C.613, subdivision 1, paragraph (b).

"The paramount consideration in all juvenile protection proceedings is the health, safety, and best interests of the child[ren]." Minn. Stat. § 260C.001, subd. 2(a) (2022); *see also In re Welfare of Child. of M.L.S.*, 964 N.W.2d 441, 454 (Minn. App. 2021).

When parental rights are terminated and "the district court appoints the commissioner of human services as the guardian of [the children], then relatives who will commit to being a permanent placement for a non-Indian child continue to receive priority consideration for placement." *M.L.S.*, 964 N.W.2d at 450. When the children's relative has (1) kept the district court informed of their whereabouts and (2) expressed a willingness to provide an adoptive home to the department, that relative must be notified of any future review hearing related to the adoption efforts, "unless the relative has been previously ruled out by the court as a suitable permanency resource for the child." Minn. Stat. § 260C.607, subd. 2(5) (2022).

"[A]fter the district court orders the child[ren] under the guardianship of the commissioner of human services, . . . a relative or the child[ren]'s foster parent may file a motion for an order for adoptive placement . . . if the relative or the child[ren]'s foster parent" has an adoptive home study approving the relative or foster parent to be an adoptive-placement option. *Id.*, subd. 6(a). When a movant makes a prima facie showing that the department has been unreasonable in failing to make the requested adoptive placement, the district court conducts an evidentiary hearing. *Id.*, subd. 6(b), (c) (2022). At an evidentiary hearing, the party moving for adoptive placement bears the burden of proving by a preponderance of the evidence that the department was unreasonable in failing to make the requested adoptive placement. *Id.*, subd. 6(d) (2022).

If, as is the case here, the district court denies "a motion for an order for adoptive placement after an evidentiary hearing," the moving party may appeal the court's order. *Id.*, subd. 6(h) (2022). That appeal "shall be conducted according to the requirements of the Rules of Juvenile Protection Procedure." *Id.*

On appeal, this court considers whether the reasons given by the department for its action are legally sufficient, and if so, whether those legally sufficient reasons have a factual basis in the record. *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75-76 (Minn. 2015); *see Hagen v. Schirmers*, 783 N.W.2d 212, 217 (Minn. App. 2010) (noting on review of district court's discretionary, custody-related decision that "district court must identify both its decision . . . as well as . . . underlying reason(s) for that decision").

Grandmother argues that when a district court makes an adoptive-placement decision between a relative and a nonrelative, the relative's petition must be considered

7

first either in a separate order or at a separate hearing before a nonrelative's petition may be considered. She contends that the supreme court's decision in *In re S.G.*, 828 N.W.2d 118, 124 (Minn. 2013), requires a district court "to think carefully and form an opinion about the grandparents' petition before considering the petition of the foster parents." We disagree.

In *S.G.*, the supreme court interpreted Minn. Stat. § 259.57, subd. 2(c) (2012), stating that the statute "require[d] that the district court first consider adoption by relatives before considering adoption by nonrelatives." 828 N.W.2d at 125. The supreme court determined that appellant's side-by-side comparison argument failed even when "the district court did not analyze the [appellant]'s petition in its entirety before turning to analyze the foster parents' petition." *Id.* This was because under those circumstances "the court . . . consider[ed] and then form[ed] a conclusion about the [relative-appellant]'s petition with respect to each factor before considering the foster parents' petition on that factor." *Id.* The supreme court noted that when the court determined that "it was not in the best interests of [the children] to be removed from the [nonrelative] foster parents' home, it impliedly concluded, as the court of appeals noted, that it was not in the best interests of [the children] to be adopted by [relative-appellants]." *Id.*

Grandmother's argument does not persuade us for two reasons. First, in *S.G.*, the supreme court considered appellant's "side-by-side comparison" argument as related to Minn. Stat. § 259.57, subd. 2(c), instead of the applicable statute, here, Minn. Stat. § 260C.607, subd 6(e).

Second, requiring the relief grandmother requests would be futile, because the district court would come to the same result after holding two separate hearings as it did after the single hearing held here. *See Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985) (declining to remand and affirming the district court in a child-custody case in which "from reading the files, the record, and the court's findings, on remand the [district] court would undoubtedly make findings that comport with the statutory language" and reach the same result).

In denying grandmother's motion for adoptive placement, the district court's order included 39 pages of analysis. The district court carefully and meticulously detailed the facts, the parties involved, and most importantly, the best interests of the children in this adoptive-placement matter that began years ago. We recognize the district court's efforts and acknowledge its thorough analysis of the children's best interests. And in the end, the district court determined that the children's best interests would be served by remaining in the nonrelative adoptive foster home.

Based on our review of the district court's detailed and thoughtful analysis of the children's best interests throughout these proceedings, under these circumstances the district court did not abuse its discretion when it denied grandmother's adoptive-placement request in favor of a nonrelative placement.

*Evidentiary decision*

Grandmother argues that the district court abused its discretion when it failed to take judicial notice of the findings made by the ALJ in a foster-care license proceeding.[3]

A district court's evidentiary rulings generally will not be reversed absent a clear abuse of discretion, and appellant bears the burden of establishing that the court abused its discretion and that appellant was prejudiced as a result. *In re Welfare of D.D.R.*, 713 N.W.2d 891, 904 (Minn. App. 2006). "A district court's decision whether to take judicial notice of proffered facts is an evidentiary ruling that we review only for abuse of discretion." *Fed. Home Loan Mortg. Corp. v. Mitchell*, 862 N.W.2d 67, 71 (Minn. App. 2015), *rev. denied* (Minn. June 30, 2015).

"The Minnesota Rules of Evidence apply to adoption matters." Minn. R. Adopt. P. 3.02. Minn. R. Evid. 201 states that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Minn. R. Evid. 201(b). District courts "may take judicial notice, whether requested or not." Minn. R. Evid. 201(c); *see In re Welfare of Child of J.B.*, 698 N.W.2d 160, 172 (Minn. App. 2005) (stating "[e]videntiary rulings are discretionary with the district court"), *petition for rev. dismissed* (Minn. May 3, 2005).

---

[3] Grandmother had previously appealed the loss of her foster-care license, a contested administrative hearing was held, and the ALJ reinstated her license.

10

Here, the decision whether to take judicial notice of certain evidence is within the district court's broad discretion. Because the district court conducted its own 7-day evidentiary hearing on grandmother's adoptive-placement motion, it did not abuse its discretion when it decided not to admit the ALJ's report.

***Grandmother's mobility***

Grandmother argues that the district court's reliance on her limited mobility was discriminatory.[4] She points to the district court's order denying the adoptive-placement motion, which recounted grandmother's "testi[mony] how a 2006 car accident affected her, her mobility, and how she overcame the challenges created by her injuries and raised her own children."

Grandmother's brief points to the district court's best-interests analysis, factor three: current functioning and behaviors of the children. In this section, the district court noted that "[grandmother] has not always recognized or acknowledged the full extent of the children's needs for services, has minimized concerns and missed appointments, causing the children to be unenrolled from beneficial services and programs." Specifically, the district court detailed grandmother's struggles in ensuring the children's safety, including:

---

[4] Grandmother cites no legal authority in support of her argument. *See State Dep't of Lab. & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to address inadequately briefed question); *In re Child of P.T.*, 657 N.W.2d 577, 586 n.1 (Minn. App. 2003) (applying *Wintz* in appeal about termination of parental rights), *rev. denied* (Minn. Apr. 15, 2003). Further, inadequately briefed issues are not properly before an appellate court. *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982); *In re Welfare of Child L.M.L.*, 730 N.W.2d 316, 322 (Minn. App. 2007) (applying *Melina* in a juvenile-protection matter). We, however, choose to address the merits of grandmother's argument.

- A "demonstrated . . . inability to proactively identify and appropriately respond to safety hazards" related to the proper installation of the children's car seats.

- The removal of a window screen by one of the children at grandmother's apartment (located on the eleventh floor of an apartment building).

- A continued "struggle with identifying safety concerns for the children and taking steps to ensure their safety and well-being," noting grandmother's "engagement to a man who is currently in prison for First-Degree Criminal Sexual Conduct."

- Grandmother's "struggles to respond quickly to prevent injury to the children, relying on verbal redirection even when a physical intervention is necessary," noting the observations from three of the department's employees, which included multiple instances of grandmother's "unsuccessful verbal redirection" when physical intervention was appropriate to ensure the safety of the children.

- Grandmother "struggled to ensure the children are properly supervised," noting a specific instance in which the children were "found in the lobby" of grandmother's apartment building while she was in the apartment sleeping.

The district court also noted that in the past two years, while the children were in their nonrelative placement, the children have not suffered severe injuries requiring medical attention. Whereas, in the approximately three years that the children were placed with grandmother, the children were taken to the emergency room five times, with "[t]hree of the five visits result[ing] in the children needing stiches or staples due to their injuries."

The district court determined that this factor supported the nonrelative placement. The record shows that the district court evaluated a multitude of concerns associated with

12

the children's general safety while living with grandmother, only one of which questioned grandmother's mobility. For that reason, we cannot conclude that the district court unreasonably relied on grandmother's mobility as a consideration about the children's placement.

In conclusion, the district court did not misapply the adoptive-placement statute when it determined that the best interests of the children required a nonrelative adoptive placement. Nor did it abuse its discretion when it chose to exclude the ALJ's report. And, finally, the district court did not discriminate against grandmother when it referenced her mobility in its best-interests analysis.

**Affirmed.**