**Alex MEHRALIAN, Appellant,**

v.

**RIVERVIEW TOWER HOMEOWNERS ASSOCIATION, INC., Charles Beckman, Respondents.**

**Nos. C7–90–1342, C9–90–1438.**

Court of Appeals of Minnesota.

Dec. 31, 1990.

Rehearing Denied Feb. 6, 1991.

Thomas M. Brudvig, Roseville, for appellant.

David L. Sasseville, Lindquist & Vennum, Minneapolis, for Riverview Tower Homeowners Ass'n, Inc.

Lea DeSouza Speeter, Lang, Pauly & Gregerson, Ltd., Minneapolis, for Charles Beckman.

Considered and decided by GARDEBRING, P.J., and RANDALL and DAVIES, JJ.

## OPINION

RANDALL, Judge.

Appellant seeks a determination that he has a right to redeem shares of stock in a housing cooperative, after a foreclosure sale, under Minn.Stat. § 504.02, a statute dealing with redemption of real property. We affirm.

## FACTS

Appellant Alex Mehralian occupies an apartment unit in Riverview Tower, a cooperative apartment complex. In December of 1986, he signed a purchase agreement with respondent Charles A. Beckman to buy 1472 shares of stock in Riverview Tower Homeowners Association ("Riverview"), a Minnesota cooperative association, and to obtain the appurtenant occupancy agreement. In completing the sale, appellant signed an "Occupancy Agreement" which stated that:

> C. The Member has purchased the above stated number of shares of the common stock of the Association, which entitles the Member to occupy a dwelling unit in Riverview Tower, subject to the terms and conditions contained in this Occupancy Agreement and in the Bylaws of the Association.

Subsequent to the purchase, Riverview replaced windows in the complex and assessed its members for their proportionate share of the cost, as provided in the bylaws. When appellant did not pay the assessment, the association complied with the bylaws in foreclosing its lien against appellant's stock in the association. Appellant's stock was sold to respondent Beckman, pursuant to Minn.Stat. § 336.9–504 (1988), which relates to sale of collateral after a default. After the stock was sold and Beckman had initiated an unlawful detainer action against appellant, appellant brought this action seeking to redeem his interest in

the stock under Minn.Stat. § 504.02, which deals with redemptions on real estate.

The trial court held that Minn.Stat. § 504.02 did not apply to this case, that Beckman was "a purchaser for value of all of [appellant's] rights in the shares of stock" and that Beckman had the "right to use and occupy" the apartment unit as a result of his ownership of the stock.

## ISSUE

Did the trial court err in holding that Minn.Stat. § 504.02, regarding redemption of real property, did not apply to the foreclosure of appellant's cooperative housing stock?

## ANALYSIS

A cooperative housing association creates a hybrid form of property ownership. The association is made up of members who attain their membership by buying stock in the association. Membership entitles a member to exclusive possession of a housing unit but the real estate is owned by the association. Nonetheless, members are entitled to a homestead credit for property tax purposes and may deduct interest payments on their federal income taxes based on the amount of association dues used to pay the mortgage associated with their share of the property.

Thus, there is a mixture of rights. While the rights flow from stock ownership, the stock ownership entitles one to many rights usually associated only with ownership of real estate. Arguably, an owner of a cooperative apartment unit might feel he is entitled to the protection of such real estate laws as Minn.Stat. § 504.02, relating to redemption of real property.

However, here appellant has entered into a carefully documented contractual relationship with the association in the form of an occupancy agreement. That occupancy agreement specifically states that occupancy of a dwelling unit in Riverview Tower is "subject to the terms and conditions contained in this Occupancy Agreement and in the Bylaws of the Association." Between these documents, the relationship between occupant and association is spelled out, as are the respective rights, remedies and procedures for enforcing such rights.

The bylaws specifically provide that:
The Association shall at all times have a lien upon the shares owned by each stockholder * * * for all indebtedness and obligations owing and to be owing by such stockholder to the Association.
and that:
The Association, at its option, may enforce collection of delinquent assessments * * * by foreclosure of the liens securing the assessments.

The bylaws contain elaborate notice procedures and waiting periods in the event of default. First, notice of special assessment must be given at least 30 days prior to its due date. Next, if a stockholder is 20 days in default, written notice of this default must be given. If the default is not cured within 40 days of notice of default, a notice of sale of stock must be given. Then, no sale may take place for at least five weeks after the notice of sale is sent. Thus, no sale can take place until at least 95 days after the first notice of default. Appellant concedes he was given the benefit of the full 95 days.

In this case, all of these procedures were followed and the sale was not actually made for some 5½ months after the default. The bylaws provide that:
At any time *before* the Association has disposed of the shares of the defaulting stockholder * * *, the defaulting shareholder * * * may cure the * * * default.
(Emphasis added) At no time during the redemption period prior to the sale of his stock in the association did appellant make any attempt to cure his default.

This court is cognizant of the value and importance of the special protection Minnesota affords real property rights. Such special protection was afforded appellant's property rights under the provisions of his contract with the cooperative. However, in the absence of any legislative determination that the statute should apply, there is no basis for superimposing the requirements of Minn.Stat. § 504.02 on the contract between the association and its mem-

bers, as the contract deals primarily with stock, which is personal property, even though, tangentially, certain aspects of real property rights are involved.

Section 504.02 is not a jurisdictional requirement in the State of Minnesota when real estate is involved. For instance, contracts for deed deal with real estate but a purchaser holding under a contract for deed is subject to cancellation procedures short of the formality of Minn.Stat. § 504.02. Depending upon when they were executed and the proportion of the purchase price paid, contracts for deed may be terminated in 30–90 days after notice of default. Minn.Stat. § 559.21 (1988).

After a proper statutory cancellation of a contract for deed, the real estate vendees' redemption rights have disappeared, regardless of whether the property was a homestead, and irrespective of the amount of equity. The protections afforded those who buy real estate with a contract for deed are deemed adequate by Minnesota courts if the procedures are strictly adhered to, even though the redemption period falls short of the mortgage foreclosure period. See Minn.Stat. § 504.02. Here we find that respondent's rigid adherence to the contract terms protecting appellant's right of redemption was exactly the protection appellant had bargained for and is enough under the law.

We decline to hold that Minn.Stat. § 504.02 applies to the foreclosure of cooperative housing stock.

### DECISION

The trial court did not err in holding that Minn.Stat. § 504.02 does not apply to the foreclosure of cooperative housing stock.

Affirmed.