**ROLLING MEADOWS COOPERATIVE, INC.,**
Appellant,

v.

**Diane MACATEE, Respondent,**

**John Doe, et al., Defendants.**

A17-0176

Court of Appeals of Minnesota.

Filed November 27, 2017

Phaedra J. Howard, Hellmuth & Johnson, P.L.L.C., Edina, Minnesota (for appellant)

Joshua Strom, Sam Khoroosi, Robins Kaplan LLP, Minneapolis, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Ross, Judge; and Schellhas, Judge.

## OPINION

SCHELLHAS, Judge

Appellant challenges the judgment in an eviction action that allows respondent an opportunity to cure her defaults and redeem her occupancy and membership in a housing cooperative. We affirm the district court's judgment to appellant for recovery of respondent's dwelling unit but reverse and remand for immediate issuance of a writ of recovery and order to vacate.

## FACTS

Appellant Rolling Meadows Cooperative is a Minnesota nonprofit cooperative corporation formed under Minnesota Statutes chapter 308A to manage the affairs of a cooperative housing community. When formed, Rolling Meadows executed a mortgage and regulatory agreement and received financing from the United States Department of Housing and Urban Development (HUD). In May 2009, respondent Diane MacAtee entered into a subscription agreement for the purchase of a membership in Rolling Meadows. The subscription agreement entitled MacAtee to occupy the premises under an occupancy agreement, approved by the cooperative's board of directors and signed by the parties. The subscription agreement required MacAtee to sign the occupancy agreement and comply with its terms. MacAtee signed the occupancy agreement in May 2009. The occupancy agreement contained a lease term of one year, renewable for successive one-year terms.

While the HUD financing was in effect, Rolling Meadows was subject to a HUD regulatory agreement, and HUD partly subsidized MacAtee's and other members' housing. In 2015, Rolling Meadows paid off its HUD loans and was released from the regulatory agreement. HUD therefore no longer subsidized members' monthly carrying charges.[1] Rolling Meadows consequently amended its bylaws to reflect the cessation of HUD oversight and it increased members' monthly carrying charges. MacAtee's monthly carrying charge increased from $542 to $567 and, in April 2016, increased to $577. MacAtee refused to pay any increase, refused to sign Rolling Meadows's amended occupancy agreement, refused to pay related assessed fines, and refused to pay other fines assessed as a result of violating Rolling

---

1. As defined in the Second Amended and Restated By-laws of Rolling Meadows Cooperative, Inc., Inver Grove Heights, Minnesota, " 'Carrying charges' shall mean the Member's proportionate share of annual assessments or charges, special assessments, Common Elements and Limited Common Elements, etc., attributed to the Member's Membership Interest and Occupancy Agreement for a Unit and sums due and liens which may be charged against said Unit."

Meadows's landscaping rules. Rolling Meadows sent MacAtee multiple notices of delinquency.

In August 2016, after MacAtee refused to sign an amended occupancy agreement, Rolling Meadows provided MacAtee 30-days' notice of termination if she did not cure her defaults. On September 30, after MacAtee failed to cure, Rolling Meadows sent her written notice of the termination of her month-to-month tenancy, along with notification that Rolling Meadows intended to terminate her cooperative membership effective October 15. Rolling Meadows also notified MacAtee of her right to request a hearing before Rolling Meadows's board of directors prior to termination of her membership.

Rolling Meadows's board of directors scheduled a hearing at MacAtee's request and then rescheduled the hearing at the request of MacAtee's legal counsel. Before the hearing date, Rolling Meadows received a letter from another cooperative member, purportedly on behalf of MacAtee and other cooperative members, informing Rolling Meadows that the members declined Rolling Meadows's "invitation/request to attend ... a meeting/hearing on November 22, 2016 for this purpose any time."

On December 5, 2016, Rolling Meadows informed MacAtee that her cooperative membership was terminated, that she must surrender her cooperative membership certificate in accordance with the second amended and restated bylaws of Rolling Meadows, and that she must vacate her dwelling unit. When MacAtee failed to vacate her dwelling unit, Rolling Meadows commenced an eviction action.

On January 20, 2017, after an evidentiary hearing, the district court granted judgment to Rolling Meadows "for recovery of the premises." But the court stayed the issuance of the writ of recovery of premis-es and order to vacate until February 24 and allowed MacAtee to "cure the instant default and avoid the issuance of the Writ" by signing a "current Occupancy Agreement" by January 31 and paying the past-due sum of $1,949 by February 23.

This appeal by Rolling Meadows follows.

## ISSUES

I. Did the district court err by staying the issuance of a writ of recovery and order to vacate and allowing MacAtee to cure her defaults and redeem her occupancy and membership in the Rolling Meadows Cooperative?

II. Did the district court resolve Mac-Atee's unlawful-retaliation claim?

## ANALYSIS

### I.

**A. After expiration of her housing-cooperative occupancy agreement and termination of her membership agreement, MacAtee was a holdover tenant under Minn. Stat. § 504B.285, subd. 1(a)(3) (2016).**

Under Minnesota law, "[t]he person entitled to the premises may recover possession by eviction" under various circumstances, including when "any tenant at will holds over after the termination of the tenancy by notice to quit." Minn. Stat. § 504B.285, subd. 1(a)(3). "Eviction" is defined as "a summary court proceeding to remove a tenant or occupant from or otherwise recover possession of real property by the process of law set out in this chapter." Minn. Stat. § 504B.001, subd. 4 (2016); *see Deutsche Bank Nat'l Trust Co. v. Hanson*, 841 N.W.2d 161, 164 (Minn. App. 2014) ("Eviction actions are summary proceedings that are intended to adjudicate only the limited question of present possessory rights to the property.").

■ We review the district court's factual findings for clear error. *See Minneapolis Cmty. Dev. Agency v. Smallwood,* 379 N.W.2d 554, 555 (Minn. App. 1985) ("Our standard of review is whether the [district] court's findings of fact are clearly erroneous."), *review denied* (Minn. Feb. 19, 1986).

In this case, the district court heard testimony and received documentary exhibits and found that "[t]he last one year lease term signed by Diane MacAtee expired on May 20, 2016"; that MacAtee refused to execute Rolling Meadows's amended occupancy agreement; that MacAtee continued to occupy the premises "under a month-to-month tenancy *following the expiration of her occupancy agreement*"; and that "[Rolling Meadows] sent Diane MacAtee notice that her month-to-month Occupancy Agreement had been terminated and that her membership would be terminated for cause, including failure to pay the increase in carrying charges owed and her failure to have a valid lease." (Emphasis added.) The court also found that:

> According to the May 20, 2009, Occupancy Agreement and progeny, Diane MacAtee agreed that if she is in default, including failure to pay any sum due pursuant to the provision of the Occupancy Agreement or the By-Laws, it shall be lawful for the Cooperative, at any time following such notice, to bring an unlawful detainer (eviction) proceeding and repossess the unit, and that *she expressly waived any and all right of redemption.*[2]

(Emphasis and footnote added.) But the court also found that "MacAtee *did not wholly fail* to pay a sum due pursuant to the Occupancy Agreement and the Bylaws. She has refused to pay the increase in carrying charges due to a *misunderstanding* about the validity of the increases in the charges." (Emphasis added.)

■ MacAtee argues that Rolling Meadows's "eviction was based on [her] failure to pay the rent increase," not on her holdover status, and that she therefore "was allowed to redeem her tenancy" under Minn. Stat. § 504B.291 (2016), anytime before possession was delivered to Rolling Meadows. She also argues that the district court identified her "failure to pay the rent increase" as her only "material violation." MacAtee's arguments are unavailing.

■ "Minnesota is a notice pleading state. The primary function of notice pleading is to give the adverse party fair notice of the theory on which the claim for relief is based." *Donovan v. Mapleview Lounge & Bottleshop, Inc.,* 666 N.W.2d 689, 694 (Minn. 2003) (citation and quotations omitted). MacAtee occupied her dwelling unit as a month-to-month tenant because she refused to sign a new occupancy agreement when hers expired on May 20, 2016. Rolling Meadows alleged in its eviction action that it had sent MacAtee a notice that her month-to-month occupancy agreement had been terminated following her failure to cure defaults, that it intended to terminate her cooperative membership, and that it had the present right to possession of the premises and had complied with Minn. Stat. § 504B.18 (2016).

---

**2.** The Rolling Meadows Occupancy Agreement states:

> The Member hereby expressly waives any and all right of redemption in case he or she shall be dispossessed by judgment of warrant of any court or Judge ... the Cooperative shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, unlawful detainer proceedings, and any other remedies were not herein provided for.

We conclude that Rolling Meadows's complaint provided ample notice to Mac-Atee that Rolling Meadows was seeking her eviction based on her holdover status.

## B. The district court erred by staying the issuance of a writ of recovery and order to vacate, allowing MacAtee to cure her defaults and to redeem occupancy of the premises and reinstatement of her co-operative-housing membership agreement.

MacAtee's occupancy agreement, which expired on May 20, 2016, provided that:

> The Member hereby *expressly waives any and all right of redemption* in case he or she shall be dispossessed by judgment of warrant of any court or Judge ... the Cooperative shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, unlawful detainer proceedings, and any other remedies were not herein provided for.

(Emphasis added.) And on September 30, 2016, Rolling Meadows provided MacAtee notice that her cooperative membership was terminated. MacAtee's occupancy agreement provided that:

> Termination of the Member's Membership Certificate under this Article [3.9] shall terminate all interest of the Member in the Cooperative, the Membership Certificate, the Membership Interest, the Occupancy Agreement and right of possession of the Member under the Occupancy Agreement. Either before or after proceeding under this Article, the Cooperative may bring unlawful detainer proceedings against the Member.

At the time of the eviction proceeding, MacAtee had no contractual right of redemption or right of redemption under Minnesota Statutes chapters 308A and 504B. *See Mehralian v. Riverview Tower Homeowners Ass'n, Inc.*, 464 N.W.2d 571, 573–74 (Minn. App. 1990) (holding that right of redemption under Minn. Stat. § 504.02 does not apply to foreclosure of cooperative housing stock [3]); *see also Univ. Cmty. Props. v. New Riverside Café*, 268 N.W.2d 573, 576 (Minn. 1978) ("[T]he right of redemption cannot meaningfully be applied to month-to-month tenancies at will."). As a holdover month-to-month tenant, MacAtee had nothing to redeem.

"Parties generally may not litigate related claims in an eviction proceeding." *Hanson*, 841 N.W.2d at 164. A party "may ... request a stay if another action related to the property is pending, but pending litigation alone does not mandate a stay." *Id.* An underlying contract dispute is not a reason to stay an eviction proceeding. *Real Estate Equity Strategies, LLC v. Jones*, 720 N.W.2d 352, 358–59 (Minn. App. 2006). Tenants can raise their equitable defenses and separate counterclaims in separate district court proceedings, where they can seek to enjoin prosecution of the eviction action. *Id.* at 359 (citing *William Weisman Holding Co. v. Miller*, 152 Minn. 330, 332, 188 N.W. 732, 733 (1922)).

Here, nothing in the record reflects that MacAtee had commenced separate litigation regarding the validity of Rolling Meadows's amended bylaws or that she had sought to enjoin the prosecution of Rolling Meadows's eviction action. Yet MacAtee maintained in the eviction proceeding that her claim of invalidity of the amended bylaws constituted a defense to

---

**3.** Minn. Stat. § 504.02 was clarified and reorganized in 1998 as Minn. Stat. § 504A.201, 1998 Minn. Laws ch. 253, § 19, at 81–82, and further recodified as Minn. Stat. § 504B.291 under 1999 Minn. Laws ch. 199, art. 1, § 39, at 1101–02. The legislature further amended Minn. Stat. § 504B.291 to its current form in 2010 Minn. Laws ch. 315, § 14, at 856–57.

the eviction action because she was entitled to a HUD-subsidized carrying charge and therefore did not owe the increased carrying charge. Indeed, the district court appears to have delayed issuance of a writ of recovery and order to vacate on the basis of MacAtee's alleged defense, stating that "MacAtee *did not wholly fail* to pay a sum due pursuant to the Occupancy Agreement and the Bylaws. She has refused to pay the increase in carrying charges due to a *misunderstanding* about the validity of the increases in the charges." (Emphasis added.) The district court also determined that

> considering all the facts and circumstances, including that *no Court had made a judicial determination advising the Members of the legality of the Board's actions*, that the defaults may still be cured and the eviction writ not issue, if Diane MacAtee cures the defaults in a reasonable time frame as determined by the Court.

(Emphasis added.)

Implicit in the district court's order is an assumption that, unless another court has "made a judicial determination" that advised Rolling Meadows's members "of the legality of the Board's actions," the members, including MacAtee, should not face termination of their occupancy and membership agreement based on their refusal to pay carrying charges that are required by the cooperative's amended bylaws. And the court's order also contains an implicit assumption that Rolling Meadows had the burden to obtain a judicial determination about the legality of its board's actions and to so advise its members. MacAtee cites no legal authority in support of the court's stay of the issuance of the writ of recovery and order to vacate, and we are aware of no such authority. Moreover, MacAtee did not dispute that she refused to pay the increased carrying charges or to sign the

amended occupancy agreement, following Rolling Meadows's amendment to its bylaws.

We hold that the district court improperly exceeded the scope of the eviction action and undermined the summary nature of the proceeding. *See Eagan E. Ltd. P'ship v. Powers Investigations, Inc.*, 554 N.W.2d 621, 621 (Minn. App. 1996) (holding that court "went beyond scope of an unlawful detainer and, by doing so, undermined the essence of the proceeding" when it decided issues other than those pertaining to present possession rights in case involving disputed rent increase).

## II.

MacAtee argues Rolling Meadows was not entitled to an immediate writ of recovery and order to vacate because her unlawful-retaliation defense remains unresolved. MacAtee is mistaken. The district court specifically found that MacAtee "did not prove by a fair preponderance of the evidence any retaliation or illegality in the voting process that would justify her refusal to pay the increase in carrying charges or sign the Occupancy Agreement." The district court resolved whether Rolling Meadows unlawfully retaliated against MacAtee in favor of Rolling Meadows.

## DECISION

After termination of occupancy and membership in her housing cooperative, MacAtee had no right to redeem occupancy of premises or housing-cooperative membership under Minnesota Statutes Chapters 308A and 504B. The district court therefore erred by staying the issuance of a writ of recovery and order to vacate and allowing MacAtee, as a holdover tenant, an opportunity to cure her defaults and redeem her occupancy and

membership in a housing cooperative. We affirm the district court's judgment to Rolling Meadows for recovery of Mac-Atee's dwelling unit but reverse and remand for issuance of a writ of recovery and order to vacate.

**Affirmed in part, reversed in part, and remanded.**